**BELTWAY MANAGEMENT CO., Individually and t/u/o Montgomery Mutual Insurance Company, Plaintiffs,**

v.

**LEXINGTON–LANDMARK INSURANCE COMPANY, Defendant.**

Civ. A. No. 89–2017–LFO.

United States District Court, District of Columbia.

Sept. 19, 1990.

**1146**

Mary Akerley, Phillip R. Zuber, Sasscer, Clagett, Channing & Bucher, Upper Marlboro, Md., for plaintiffs.

Steven R. Migdal, Manis, Snider, Buck & Migdal, Annapolis, Md., for defendant.

## MEMORANDUM

OBERDORFER, District Judge.

This suit considers whether an insurance carrier must defend an insured landlord against its tenants' claim for breach of the implied warranty of habitability. The Broad Form Comprehensive General Liability Endorsement (the "Broad Form Endorsement") issued to the landlord here covers "personal injury," defined in the endorsement to include "wrongful entry or eviction or other invasion of the right of private occupancy." [1] The ultimate issue is whether "other invasion[s] of the right of private occupancy" encompass violations of the warranty of habitability.

## I. BACKGROUND

### A. *Procedural History*

This controversy about an insurer's duty to defend has its origin in a case currently pending in the Superior Court for the District of Columbia. In early March of 1987, the Tyler House Tenant Council (the "Tenant Council") commenced an action against Beltway Management Company ("Beltway") and several others in the Superior Court of the District of Columbia.[2] The Tenant Council is a nonprofit corporation made up of the tenants of the Tyler House, a three-hundred-unit apartment complex in Washington, D.C.[3] It sued Beltway, the company responsible for managing the apartments, for, *inter alia*, breach of the common law and statutory warranties of habitability.[4] The complaint alleged nu-

---

1. Broad Form Endorsement § II(D)(2), Policy No. GLA 5000676. The Policy is Exhibit 1 in Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment [hereinafter the "Policy"].

2. *See* Plaintiff's Statement of Material Facts Not in Dispute ¶ 7 [hereinafter "Plaintiff's Statement"]; Defendant's Statement of Material

Facts Not in Dispute ¶ 4 [hereinafter "Defendant's Statement"].

3. *See* Plaintiff's Statement ¶ 7.

4. *See* Amended Complaint, *Johns v. Tyler House Apartments, LTD I*, No. CA–1638–87, ¶¶ 16–24 (D.C.Sup.Ct. Aug. 5, 1988). The Amended Complaint is Exhibit C in Defendant's Memorandum in Support of Motion for Summary Judgment.

merous fire and housing code violations, including unlit hallways and stairwells, inoperative fire alarms, loose ceilings, broken windows, exposed wiring, roach and rodent infestation, inadequate cooking facilities, and periodic deprivations of heat.[5]

In this case, Beltway and its excess insurer, Montgomery Mutual Insurance Company ("Montgomery"), sues Lexington–Landmark Insurance Company ("Landmark"). Landmark is Beltway's primary insurer. Montgomery is Beltway's excess insurer.[6] When the Tenant Council sued Beltway, Beltway separately demanded that both Montgomery and Landmark defend it.[7] Landmark refused to do so, whereupon Montgomery agreed to provide the defense.[8] Beltway and Montgomery now sue Landmark for breach of its duty to defend.

Landmark has moved for summary judgment on the issue of its duty to defend. Plaintiffs have filed a cross-motion for partial summary judgment on the same issue, reserving the question of the nature and extent of damages sustained. Because these motions focus upon the interpretation of contractual provisions and because neither party contends there is relevant parol evidence, there are no genuine issues of material fact in dispute. As a consequence, this controversy is susceptible to resolution on a motion for summary judgment. *See* Fed.R.Civ.Proc. 56(c).

### B. *The Policy*

The insurance contract in question was not issued directly to Beltway. Instead, it was part of a purchase of insurance by the National Investment Development Corporation extending from January 1, 1986 to January 1, 1987.[9] The contract covered over one hundred and thirty-two locations nationwide, called for an advance premium of well over a million dollars, and contemplated payments of up to one million dollars per claim.[10] The Tyler House is one of those locations covered by that policy, and Beltway is an additional named insured.[11]

Like most insurance contracts, this policy is an amalgam of general forms and specially tailored modifications. The bulk of the coverage is described in the standard "Comprehensive General Liability Insurance" form. That general form is in turn modified by the "Broad Form Comprehensive General Liability Endorsement," a general liability extension schedule, twelve typed endorsements, and an elevator collision insurance attachment. The Comprehensive General Liability form covers most accidental injuries to persons and to property. The Broad Form Endorsement extends that coverage to a broad array of injuries caused either intentionally or through negligence such as libel, malpractice, and wrongfully entry as well as some damage to property in the custody of the insured. Some injuries arising out of negligent or intentional acts are in turn excluded by typed endorsements.[12]

The passage in dispute is found in section II of the Broad Form Endorsement. The section begins by providing that:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of *personal injury* or advertising injury to which this insurance applies, sustained by any person or organization and arising out of the named

5. *See id.* ¶¶ 16–20.

6. *See* Policy No. COP 3702456. Montgomery's Policy is Exhibit 2 in Plaintiff's Memorandum of Points and Authorities in Support of Motion for Summary Judgment.

7. *See* Letter from Robert Kallio to American International Adjusters, July 8, 1988, Exhibit 4, Plaintiff's Motion for Summary Judgment; Plaintiff's Statement ¶ 12.

8. *See* Plaintiff's Statement ¶ 13; Defendant's Statement ¶ 6.

9. *See* Endorsement A, Policy.

10. *See* Cover Page, Policy; Endorsement A, Policy; Endorsement D, Policy.

11. *See* Endorsement A, Policy.

12. *See* Endorsement F, Policy (excluding asbestos-related injuries); Endorsement G, Policy (excluding injuries related to hazardous waste disposal).

insured's business, within the policy territory....

Broad Form Endorsement § II (emphasis added). The endorsement then describes the duty to defend: "[T]he company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury...." *Id.* The term "personal injury" is not used in the normal sense in these passages. It does not refer to physical injuries; those are described as bodily injuries and treated in section III of the Broad Form Endorsement. Personal injury is specially defined to encompass three particular classes of injuries:

"Personal Injury" means injury arising out of one or more of the following offenses committed during the policy period:

(1) false arrest, detention, imprisonment, or malicious prosecution;

(2) wrongful entry or eviction or other invasion of the right of private occupancy;

(3) a publication or utterance

(a) of a libel or slander or other defamatory or disparaging material, or

(b) in violation of an individual's right of privacy....

*See id.* at § II(D).

## II. PRELIMINARY MATTERS

Beltway and Landmark dispute whether section II(D)(2) of the Broad Form Endorsement extends coverage over the Tenant Council's claims of breach of the warranty of habitability. Before determining whether it does, it is necessary to consider several preliminary matters. The first matter is the proper law to apply in this case.

### A. *Choice of Law*

 Because this case is before the Court on the basis of diversity of citizenship, state law governs its determination. Generally the law of the state in which the federal court is located governs, and the parties have assumed in their briefs and at oral argument that District of Columbia contract law controls the interpretation of the Policy. It is, however, possible that New York law should apply. Accordingly, it is necessary to investigate what law governs interpretation of the Policy under District of Columbia conflicts of law doctrine.

There is some evidence that the Policy was drafted with New York law in mind. Several of the so-called amendatory endorsements are labelled "New York." *See* Amendatory Endorsement, Policy; Cancellation Provision or Coverage Change Endorsement, Policy; Amendment of Hired Automobile and Non-owned Automobile Liability Coverage, Policy. These endorsements seem to make technical amendments to conform the general forms used in this insurance contract to New York law. None of these amendments, however, affects section II(D)(2). More importantly, the contract does not explicitly designate which state's law should apply to it. Thus, there are only a few factors indicating that New York law should be applied to this controversy.

By contrast, there are strong factors arguing in favor of applying District of Columbia law. As stated above, both parties have assumed in their briefs and at oral argument that D.C. law applies. The underlying events took place in the District of Columbia. Moreover, the District of Columbia has a strong interest in the resolution of this conflict because it affects the rights of a landlord doing business within the District and because it may indirectly affect the rights of the tenants of the Tyler House domiciled within the District. New York by contrast has little interest in this conflict because none of the parties to it are domiciled within that state. Because the District of Columbia has both a stronger interest in the resolution of this conflict and more significant contacts with the suit, under District of Columbia conflicts of law doctrine District of Columbia law should govern the construction of the insurance contract. *See Hercules & Co. v. Shama Restaurant Corp.*, 566 A.2d 31, 40–41 (D.C.1989); *Estrada v. Potomac Elec. Power Co.*, 488 A.2d 1359, 1361 & n. 2 (D.C.1985).

Before determining whether under District of Columbia law Landmark has a duty to defend against claims of breach of the warranty of habitability, it is necessary to

review the law concerning these items separately.

### B. The Implied Warranty of Habitability

■ Under District of Columbia law, the warranty of habitability is a nonwaivable term implied into all lease agreements. *See, e.g., George Washington University v. Weintraub*, 458 A.2d 43, 47 (D.C.1983). The warranty requires landlords to "exercise reasonable care to maintain rental premises in compliance with the housing code in order to fulfill the implied warranty of habitability." *Id.* at 49; *see also Javins v. First Nat'l Realty Corp.*, 428 F.2d 1071, 1081 (D.C.Cir.1970) (describing the warranty of habitability as imposing upon the landlord the "continuing obligation to the tenant to maintain the premises in accordance with all applicable law.").[13] The District of Columbia Housing Regulations require landlords to perform "repairs and maintenance designed to make a premises or neighborhood safe and healthy." 5G DCR § 2501. Together, the implied warranty of habitability combined with the District of Columbia housing regulations guarantee District of Columbia tenant what they seek when they rent an apartment or house:

> When American city dwellers, both rich and poor, seek "shelter" today, they seek a well known package of goods and services—a package which includes not merely walls and ceilings, but also adequate heat, light and ventilation, serviceable plumbing facilities, secure windows and doors, proper sanitation and proper maintenance.

*Javins*, 428 F.2d at 1074 (footnote omitted). The Restatement (Second) of Property boils this guarantee down nicely and accurately: The implied warranty of habitability prohibits landlords from rendering, through action or inaction, "the leased property unsuitable for the use contemplated by the parties." Restatement (Second) of Property § 5.4 (1977).

### C. The Duty to Defend

■ Beltway does not now contend that Landmark must indemnify it for the Tenant Council's claims of breach of the warranty of habitability. Instead, Beltway contends that Landmark has a duty to defend Beltway against the Tenant Council's complaint. Under District of Columbia law, Landmark's duty to defend may be broader than its obligation to pay: If the complaint "states a cause of action within the coverage of the policy, the insurance company must defend." *Continental Cas. Co. v. Cole*, 809 F.2d 891, 895 (D.C.Cir. 1987) (citing *Boyle v. Nat'l Cas. Co.*, 84 A.2d 614, 615–15 (D.C.Mun.App.1951)). Thus, even though an insurance company might ultimately not have to indemnify the insured, the insurer must honor its duty to defend if there is a potential for liability on any count in the complaint.

This duty to defend does not extend beyond the scope of the policy:

> The distinction between alleged and proven facts requires that the duty to defend be larger than the duty to indemnify, but there is nothing here that requires that the duty to defend be larger than the scope of the policy.

*S. Freedman & Sons, Inc. v. Hartford Fire Ins. Co.*, 396 A.2d 195, 97 (D.C.1978). In this case, the tenants allege, among other things, that the landlord insured breached its warranty of habitability. Irrespective of any other allegations and irrespective of the ultimate merits of the tenants' suit, the insured must defend against the complaint if the Policy covers such a breach. The parties' cross-motions for summary judgment therefore turn upon whether a violation of the warranty of habitability is an "invasion of the right of private occupancy" covered under section II(D)(2) of the Broad Form Endorsement.

### III. CONTENTIONS OF THE PARTIES

Beltway contends that the violations of the warranty of habitability alleged by the Tenant Council constitute an "invasion of

---

**13.** When *Javins* was decided, the Court of Appeals for the District of Columbia Circuit acted as the court of final judgment on questions of District of Columbia law. Accordingly, *Javins* is the governing *state* law in this situation.

the right of private occupancy." First of all, Beltway contends, the meaning of "right of private occupancy" is plain. The warranty of habitability insures that leased premises are fit for use. Such fitness is necessary for private occupancy. Therefore, a violation of the warranty of habitability must be an invasion of the right of private occupancy. According to Beltway, this same conclusion can be inferred from a close reading of the context. Listing wrongful entry and wrongful eviction as well as invasions of the right of private occupancy, the Broad Form Endorsement contemplates a category of claims by tenants against landlords. Because claims for violations of the warranty of habitability are one of the most basic and frequent claims, they should, Beltway argues, be included in any general category of claims against landlords unless specifically excluded.

Landmark characterizes Beltway's reading of the Broad Form Endorsement as a "forced and unreasonable construction of the policy language." Defendant's Memorandum in Support of Motion for Summary Judgment at 5. Insurance contracts, Landmark asserts, are not meant to cover every conceivable type of law suit that may be filed. The Policy in question offered insurance for accidents occurring on the premises and a limited number of other personal injuries, such as false arrest, malicious prosecution, wrongful eviction, invasion of privacy, and defamation. It was "never intended to subsidize the insured's cost of doing business and/or repairing and maintaining rental properties." *Id.* at 10. A proper interpretation of the rights of private occupancy, according to Landmark, must analyze the rights of private occupancy in light of the rights listed directly before it. The Broad Form Endorsement extends coverage to "wrongful entry and eviction." Both of those terms guarantee tenants that their rights of physical possession will not be violated. It follows under Landmark's logic that "other invasion[s] of the right of private occupancy" should also cover other invasions of the rights of physical possession. The Tenant Council's claims do not allege any invasions of the

tenants' possessory interests. Therefore, Landmark concludes, those claims are outside the scope of the Policy's coverage, and it has no duty to defend against them.

As a fall back, Landmark contends that even if violations of the warranty of habitability are covered by the Policy, coverage is still not available for the Tenant Council's suit. First, the Tenant Council's Amended Complaint alleges that unsafe and unsanitary conditions existed in 1984, well before the effective date of Beltway's Policy. Second, the Amended Complaint does not allege any physical injury or damage, both of which are required under Beltway's Policy. Third, the Policy specifically excludes coverage for willful violations of penal statutes. Because the Tenant Councils' claims are based upon violations of the fire and housing code, Landmark contends that the Policy specifically excludes coverage for claims such as the Tenant Council's.

## IV. "OTHER INVASION[S] OF THE RIGHT OF PRIVATE OCCUPANCY" AND THE IMPLIED WARRANTY OF HABITABILITY

■ The core question in this case—whether violations of the warranty of habitability constitute an invasion of the right of private occupancy under the Policy—is a difficult one. The phrase "other invasion of the right of private occupancy" is ambiguous, and both parties offer plausible interpretations. It is nevertheless possible to resolve this dispute because other tools of interpretation support Beltway's interpretation. That interpretation better reflects both the Broad Form Endorsement as a whole and the specific context in which the language at issue occurs. Beltway's interpretation also reflects contemporary thinking about the landlord-tenant relationship. It is also more consonant with interpretations by other courts of the same policy language than Landmark's interpretation. Indeed, upon close analysis, Landmark's interpretation is unacceptable because it would render "other invasion[s] of the right of private occupancy" mere surplusage. Indeed, to give that phrase meaning, it may be necessary to interpret it to cover

violations of the warranty of habitability. It must therefore be concluded that the Broad Form Endorsement covers claims for the violation of the warranty of habitability.

## A. *Plain Meaning*

Under District of Columbia law, the starting point for interpreting insurance contracts is the "plain meaning which common speech imports." *Int'l Brotherhood of Painters & Allied Trades v. Hartford Accident & Indemnity Co.,* 388 A.2d 36, 42 (D.C.1978). If at all possible, the contract's terms must be read "for the meaning they would carry in ordinary language." *S. Freedman & Sons v. Hartford Fire Ins.,* 396 A.2d at 199. In this case, however, the word "occupancy" is not used in its ordinary sense. Moreover, both parties suggests interpretations that, based upon the language in isolation, are plausible.

"Occupancy" normally refers to the state of being inhabited. For example, landlords often take out "use and occupancy" insurance as a hedge against any "inability to keep the premises occupied." 1 *Couch on Insurance* § 1:113, at 275 (M. Rhodes ed. rev. 2d ed. 1984) (citation omitted). Similarly, insurers may offer builder's risk insurance on the condition that there is no "occupancy." *See* 8 *Couch on Insurance* § 37A:307, at 355. Occupancy also refers to the number of occupants a premises may company. Thus, zoning regulations may designate specific areas for single or multiple occupancy units. *See, e.g., Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); *Village of Belle Terre v. Boraas,* 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974).

The Broad Form Endorsement does not refer to either of these common uses of occupancy. When it speaks of "other invasion[s] of the right of private occupancy," the Endorsement does not use "occupancy" to refer to the state of being inhabited or to the number of inhabitants a premises may support but rather to the act of inhabiting or possessing property. The "right of private occupancy" refers to those rights associated with an individual's act of occu-

pying an apartment. The question remains what those rights are.

Landmark contends that rights of private occupancy are possessory rights. This interpretation equates the act of occupying with physical possession, and the rights associated with that act with the rights associated with possession. Beltway contends that the rights of private occupancy referred to in the Broad Form Endorsement are broader. Beltway would include within those rights certain rights to use the premises. The chief right would be the right to a premises fit for use, which is equivalent to the implied warranty of habitability. Thus, Beltway reads the right of private occupancy to include the right to something occupiable.

Both interpretations draw support from dictionary definitions. One dictionary, *Webster's,* defines occupancy to be, among other things, "the taking and holding possession of real property under a lease or tenancy at will." *Webster's Third New International Dictionary* 1560 (1971). Focusing primarily upon physical possession, this definition lends to support Landmark's contention that the rights of private occupancy are rights of possession. This definition does not, however, exclude Beltway's interpretation: It is possible that "holding possession" implies a premises which can be held. In other words, the definition may contemplate a premises fit for use, and the rights associated with that definition may include the warranty of habitability. This interpretation of "occupancy" draws support from another dictionary definition: *Black's Law Dictionary* defines occupancy as "[t]aking possession of property and use of the same; said *e.g.* of a tenant's use of leased premises." *Black's Law Dictionary* 973 (5th ed. 1979). Suggesting that use is central to the concept of occupancy and possession, this definition supports Beltway's position. Nevertheless, a fair reading of these definitions together cannot be said to support either party emphatically.

More technical sources are similarly unhelpful. The phrase "right of private occupancy" does not appear to be a term of art.

Searches on both LEXIS and WESTLAW reveal that besides cases quoting the language of the Broad Form Endorsement, the only repeated use of that term is in connection with searches of hotel and motel rooms. *See, e.g., United States v. Akin,* 562 F.2d 459 (7th Cir.1977) (considering when Fourth Amendment rights attach to guests). Moreover, although the term "occupancy" has a technical meaning in property law, it is not being used in that sense here. In property doctrine, "occupancy" refers to the method of acquiring legal rights to unclaimed objects.[14] The Broad Form Endorsement cannot be using occupancy in this sense because the landlord already has a claim of right to the premises; moreover, the tenant does not establish his right to possession through physical possession, or adverse possession, but rather through the lease contract.

In sum, although Beltway's interpretation is the more elegant of the two, Landmark's interpretation "other invasion[s] of the right of private occupancy" is quite plausible, and neither ordinary language, dictionary definitions, or technical usage clearly prefers one interpretation over the other. As a consequence, it is necessary to turn to other tools of construction.

### B. *Other Tools of Interpretation*

Once those tools are applied, it becomes clear that Beltway's interpretation is superior. Although initially plausible, Landmark's interpretation is premised upon a mistaken reading of the text. A broader interpretation such as Beltway's which reads "other invasion of the right of private occupancy" to encompass a broad range of claims against landlords is more faithful to the text of the Broad Form Endorsement. Given modern principles of landlord-tenant law, that broad range must include claims for the breach of the warranty of habitability. Although there are no cases directly on point, this reasoning is supported by ample precedent which for the most part reads the Broad Form Endorsement even more broadly.

Landmark emphasizes that section II(D)(2) lists three items: "wrongful entry or eviction or other invasion of the right of private occupancy." Landmark reasons that the final item should read as a basket phrase, a catch-all meant to encompass the broader category of which the first two items, wrongful entry and wrongful eviction, are a part. Since both wrongful eviction and wrongful entry involve rights of possession, respectively the right to maintain possession and the right to sole possession, Landmark reasons that "other invasion[s] of the right of private occupancy" must involve a similar invasion of possessory rights. According to Landmark, "[a] typical example of such conduct would be improper entry by a landlord with a pass key or improper entry by a landlord without prior notice to the tenant." Defendant's Response to Plaintiff's Motion for Partial Summary Judgment at 2. Apparently, then, invasions of the right of private occupancy would refer to actions that like use of a pass key might not technically constitute wrongful entry but are quite similar to the enumerated offenses. Because violations of the warranty of habitability have nothing to do with entry or with actual eviction,[15] Landmark concludes that the Tenant Council's complaint stating such violations does not trigger Landmark's duty to defend.

This analysis is premised upon a misreading of the contract. Landmark reads section II(D)(2) as if it listed three related items: "wrongful entry, wrongful eviction, or other invasion of the right of private occupancy." However, the actual language disconnects these three items by stating *in hoc verba* that personal injury

---

14. Specifically, one establishes a legal interest in *res nullius,* or unclaimed property, by establishing (a) dominion or control over it with (b) an intent to keep that object as one's own. *See, e.g., Pierson v. Post,* 3 Caines 175 (N.Y.S.Ct.1805) (considering whether a hunter who chases but does not capture a wild animal has a possessory interest superior to that of a hunter who intervenes and slays the exhausted beast); *see gener-*

*ally* C. Donahue, T. Kauper, P. Martin, *Property: An Introduction to the Concept and the Institution* 1–56 (2d ed. 1983);

15. Violations of the warranty of habitability are, however, similar, if not identical, to constructive evictions. *See supra* 21.

"means injury arising out of ... wrongful entry or eviction or other invasion of the right of private occupancy." Policy § II(D)(2). This definition is better read as referring to two independent categories:

(a) wrongful entry or eviction or

(b) other invasion of the right of private occupancy.

The elision of "wrongful" in front of eviction indicates that wrongful entry and wrongful eviction are part of the same group. The second conjunction indicates a second grouping, and "other" emphasizes that this second group refers to a different type of harm. If section II(D)(2) is read properly, there is no compelling reason to limit the definition of "other invasion of the right of private occupancy" to offenses literally akin to wrongful entries and evictions.

There are compelling reasons to interpret that section more broadly. Read in context, that section extends coverage to a broad range of claims against landlords. The section includes claims for eviction, an act primarily done by landlords because eviction implies a superior title to the property. Given that the Broad Form Endorsement contemplates some claims against landlords, the abstract and general nature of the phrase "invasion[s] of the right of private occupancy" suggests that it covers the general category of such claims. This reading fits the structure of the Broad Form Endorsement. The Endorsement defines personal injury in three parts. *See supra* 5. The first part provides insurance against claims arising from detention: "false arrest, detention, imprisonment, or malicious prosecution." *See* Policy § II(D)(1). The third section covers claims arising from publications or utterances such as libel or claims for violation of privacy. *See id.* § II(D)(3). It follows that the second part, the part at issue, covers a third category of claims—those arising from a landlord's deprivation of a tenant's rights.

That category must include claims of breach of the warranty of habitability. Any other interpretation would be anachronistic and contrary to both contemporary understandings and current property doctrine. There was a time when leases were seen as conveyances creating a simple right to possession. *See, e.g.,* C. Donahue, T. Kauper, P. Martin, *Property: An Introduction to the Concept and the Institution* at 886–93; C. Moynahin, *Introduction to the Law of Real Property* 71–76 (2d ed. 1988). In that day and age, it would have been natural to view claims against landlords as concerned with possessory interests. Now, however, leases are not seen as mere conveyances but rather as contracts between tenants and landlords for a distinct set of goods and services.

> Today's urban tenants, the vast majority of whom live in multiple dwelling houses, are interested, not in the land but solely in 'a house suitable for occupation.'

*Javins,* 428 F.2d at 1078 (footnote omitted) (quoting *Ingalls v. Hobbs,* 156 Mass. 348, 31 N.E. 286 (1892)); *see also George Washington University v. Weintraub,* 458 A.2d at 46. Thus, under current property law, and even more importantly under contemporary understanding of the landlord-tenant relationship, it is natural to interpret the broad rights of private occupancy to include the warranty of habitability and the right to a premises "suitable for occupation." Absent any express exclusion of such claims, it would be strange to exclude claims for the violations of the warranty of habitability from a category of claims against landlords.

This conclusion is supported by ample precedent. Although there are no cases precisely on point, most courts interpreting section II(D)(2) of the Broad Form Endorsement have interpreted it broadly, more broadly in fact than Beltway suggests. In *Town of Goshen v. Grange Mutual Ins. Co.,* 120 N.H. 915, 424 A.2d 822 (1980), the New Hampshire Supreme Court entirely disengaged the right of private occupation from possession of property. In that case, the underlying plaintiff charged that the insured city's zoning decisions had destroyed the economic viability of land he had intended to develop. Rejecting the requirement that there be "an appreciable and tangible interference with the physical property itself," the New Hampshire Su-

preme Court found a potential for liability, and therefore a duty to defend, because the city's zoning decisions could have limited the plaintiff's "right to free enjoyment of his property without due process of law." *Id.* at 917–18, 424 A.d at 824; *see also Town of Stoddard v. N. Sec. Ins. Co.*, 718 F.Supp. 1062, 1064 (D.N.H.1989) (following *Goshen* ); *Geauga County v. Forum Ins. Co.*, 1988 WL 41535, at *3 (Ohio App. April 29, 1988) (same). Other courts have found discriminatory refusals to rent to be invasions of the right of private occupancy even though the would-be renter does not yet have possession. *See State Farm Fire & Cas. Co. v. Westchester Inv. Co.*, 721 F.Supp. 1165 (C.D.Cal.1989); *Gardner v. Romano*, 688 F.Supp. 489, 492 (E.D.Wisc. 1988); *Ranger Insurance Company v. Bal Harbour Club, Inc.*, 509 So.2d 940 (Fla. App.1985) (same).

Even courts adopting more conservative interpretations do not support Landmark's contention that the rights of private occupancy are limited to bare possessory rights. In *Puritan Ins. Co. v. 1330 Nineteenth St. Corp.*, this Court read the Broad Form Endorsement to require that the underlying plaintiff must have physical possession of the insured's property before the insurer's duty to defend arises and therefore refused to find coverage for claims of discrimination in renting. *See* 1984 Fire & Casualty Cas. ¶ 1149 (Nos. 83–2228 & 83–1754); *accord Martin v. Brunzelle*, 699 F.Supp. 167 (N.D.Ill.1988); *Larson v. Continental Cas. Co.*, 377 N.W.2d 148 (S.D. 1985). *Puritan* does not, however, help Landmark. The members of the Tenant Council have possession of Beltway' apartments and, thus, are not precluded by these cases. Furthermore, the requirement that the underlying plaintiff have possession does not conflict with coverage for breaches of the warranty in habitability because the possession requirement in no way implies that the rights protected are limited to possession. Thus, while there is support for Beltway's expansive interpretation, Counsel has cited no precedent supporting Landmark's restrictive interpretation and research has disclosed none.

Premised upon a misreading of the text, out of step with modern understandings of leases, and unsupported by precedent, Landmark's interpretation of "other invasion[s] of the right of private occupancy" is unpersuasive. By contrast, Beltway's interpretation fits with the structure of section II(D)(2) and of the Broad Form Endorsement, at least tangentially reflects modern thinking about leases, and is reasonably well-supported by precedent. For these reasons, "other invasion[s] of the right of private occupancy" should be interpreted to include breaches of the implied warranty of habitability.

### C. Policy Language Cannot Be Surplusage

It is possible to reach the same conclusion through another sort of analysis. It is not lightly to be assumed that any contractual terms are mere surplusage, especially those included in a definition. Yet, Landmark has not shown how the interpretation of the phrase "other invasion of the right of private occupancy" advanced in its papers would refer to any potential claims. Moreover, if it is conceded that that phrase encompasses constructive eviction, which Landmark seems to have done at oral argument, it must also be conceded that it encompasses breaches of the warranty of habitability.

Landmark asserts that the rights of private occupancy are limited to possessory interests, but it does not offer any examples of what claims against the insured would be covered. As detailed above, Landmark contends that invasions of the right of private occupancy are similar to, but due to some technical defect, not quite qualifying as, wrongful entry or eviction. This reading would render the policy language nugatory. "Other invasion of private occupancy" cannot refer to "improper entry" by the landlord. If an entry is not wrongful, it is not tortious; and if it is not tortious, the tenant cannot recover damages from the landlord and the insurance company will never have to defend. Landmark attempts to save this argument by suggesting that the landlord might damage property after having entered improperly.

Such damage, however, would be more naturally covered by section VI of the Broad Form Endorsement which is entitled "Broad Form Property Damage Liability Coverage." More essentially, a tenant would not need any "right of private occupancy" to sue for such damage: The tenant could sue based upon his or her right to the property damaged. Thus, Landmark's interpretation would make the phrase "other invasion[s] of the right of private occupancy" meaningless.

■ Moreover, Landmark's own reasoning supports a different conclusion. If "other invasion[s] of the right of private occupancy" refers to invasions which are nearly identical to wrongful entry and eviction, at a minimum constructive eviction must be included. If, however, claims of constructive eviction are covered, claims for breach of the warranty of habitability must also be covered because the rights protected by the tort of constructive eviction and those assured under the warranty of habitability are functionally indistinguishable under District of Columbia law.

In describing the doctrine of constructive eviction, our Court of Appeals has explained that "where the landlord is able but unwilling to repair the premises, he has, by hypothesis, made them *uninhabitable* and, hence, constructively deprived the tenant of possession." *Robinson v. Diamond Housing Corp.*, 463 F.2d 853, 869 (D.C.Cir. 1972) (emphasis added) (citations omitted). Thus, constructive eviction assures a tenant of a premises fit for possession, which is precisely what the warranty of habitability assures. In fact, the two doctrines are often viewed as alternative remedies for the same harm: Under constructive eviction, the tenant could leave without any continuing obligation to pay rent; under the warranty of habitability, the tenant could repair and deduct. *See Bell v. Tsintolas Realty Co.*, 430 F.2d 474, 478 n. 26 (D.C.Cir.1970); *see also Marini v. Ireland*, 56 N.J. 130, 146, 265 A.2d 526, 535 (1970). The Restatement of Property treats the landlord's "Obligation of the Landlord to Keep Lease Property in Repair" in one section, and in another section discussing

remedies the Reporter's Note treats both constructive eviction and the warranty of habitability. Restatement (Second) of Property § 5.5; *id.* § 5.4, Reporter's Note. Moreover, *Robinson*'s use of the term "habitability" in the definition of constructive eviction can hardly be said to be inadvertent because two years earlier, the Court of Appeals had drawn upon constructive eviction cases in formulating the warranty of habitability. *See Javins,* 428 F.2d at 1078 n. 38.

Landmark attempts to distinguish the two doctrines by observing that constructive eviction alone requires abandonment of the leased premises. *See* 1 American Law of Property § 3.50, at 277 (A.J. Casner ed. 1952). This is not a difference that makes a difference. At one time, abandonment was thought necessary to constructive eviction on the theory that a "tenant cannot claim uninhabitability, and at the same time continue to inhabit." *Two Rector Street Corp. v. Bein,* 226 App.Div. 73, 76, 234 N.Y.S. 409, 412 (Sup.Ct.App.Div.1929) *quoted in Lemle v. Breeden,* 51 Haw. 426, ——, 462 P.2d 470, 475 (1969). Whatever force that theory may once have had, it has certainly been rejected in this jurisdiction. By adopting the warranty of habitability, D.C. recognized that a tenant often must continue inhabiting premises no longer fit for use.

Because Landmark's attempt to distinguish between constructive eviction and violations of the warranty of habitability is unpersuasive, it follows that even under a narrow interpretation of "other invasion[s] of the right of private occupancy" the Broad Form Endorsement covers claims for the breach of the warranty of habitability.

### D. *Express Exclusion*

As a fall back position, Landmark argues that the Policy excludes coverage for the warranty of habitability. In this view, the Policy was "never intended to subsidize the insured's cost of doing business and/or repairing and maintaining rental properties." Defendant's Memorandum of Points and Authorities in Support of Motion for Summary Judgment, at 10. This argument is appealing if one thinks of insurance in

terms of accidents or natural disasters, occurrences over which the insured has little control and little ability to anticipate. The Comprehensive General Liability Insurance form does precisely that, but the Broad Form General Comprehensive Liability Endorsement modifying that form expressly extends coverage beyond accidents to include intentional acts such as arrest, prosecution, eviction, wrongful entry, even advertising decisions which are attacked as libelous or slanderous. *See* Broad Form Endorsement § II(D); *see also supra* 4.

Moreover, Landmark cannot fairly contend that it excluded coverage for the warranty of habitability in this particular case. "[I]t is standard insurance contract doctrine that ambiguous policy language should be construed in favor of the insured wherever reasonable." *See Continental Cas. Co. v. Cole*, 809 F.2d at 895, *citing* 2 *Couch on Insurance* § 15:74. Even if this "contra insurer" norm applies with less force here where there is a powerful intermediary negotiating with the insurer, Landmark must point to at least some evidence of its intentions in the contract. *Cf. Town of Epping v. St. Paul Fire & Marine Ins. Co.*, 122 N.H. 248, 252–53, 444 A.2d 496, 499 (1982). There being no such evidence, Landmark's position becomes untenable.

In any event, it does not necessary follow that Landmark will be forced to "subsidize" Beltway's costs of doing business. As mentioned above, the duty to defend is broader than the obligation to pay. Public policy may prohibit indemnification of insurers who adopt a systematic practice of violating the housing code by not repairing their premises. *Compare Ranger Ins. Co. v. Bal Harbour Club, Inc.*, 509 S.2d 940 (finding a duty to defend against charges of discrimination in housing) *with Ranger Ins. Co. v. Bal Harbour Club, Inc.*, 549 So.2d 1005 (Fla.1989) (barring indemnification of insureds who intentionally discriminate). The possibility of such a bar does not abrogate Landmark's duty to defend. As Justice O'Connor observed while a state court judge, where any claim alleged in the complaint is within the policy's coverage, the majority rule is that "the insurer has a duty to defend the entire suit, because it is impossible to determine the basis upon which the plaintiff will recover (if any) until the action is complete." *Western Cas. & Surety Co. v. International Spas*, 130 Ariz. 76, 79, 634 P.2d 3, 6 (Ct.App.1981) (O'Connor, J.) (citations omitted).

### E. *Conclusion*

Although the meaning of the phrase "other invasion of the right of private occupancy" may not be plain from the language taken in isolation, once other tools of interpretation are applied it becomes clear that the phrase includes breaches of the implied warranty of habitability. Read in context, section II(D)(2) refers to claims against landlords and "other invasion[s] of the right of private occupancy" to a broad category of those claims, a category separate from intrusions upon possessory rights like wrongful entry or eviction. Based on the contemporary understanding of the nature of the leasehold interest, that category must include breaches of the implied warranty of habitability. Judged against other judicial interpretations of the same language, this reading is not only reasonable; it is rather conservative. By contrast, Landmark's interpretation finds little support in the actual language or in precedent. In fact, under Landmark's own reasoning the rights of private occupancy must include the warranty of habitability. For these reasons, Landmark has a duty to defend Beltway against allegations of breach of the warranty of habitability.

## V. REMAINING CONTENTIONS

Several issues remain. Landmark contends that even if violations of the warranty of habitability are generally covered by the Broad Form Endorsement, the specific claims made by the Tenant Council are not. Landmark posits three grounds: (1) the injuries alleged in the Amended Complaint occurred outside the Policy period; (2) before liability can arise, the Broad Form Endorsement requires both physical injury and resulting damage, neither of which was alleged in the Amended Complaint; (3) the Amended Complaint alleges willful violations of a penal statute, coverage of

which is specifically excluded. Each of these contentions must be rejected.

### A. Policy Period

■ Landmark contends that Tenant Council's claims arise out of incidents occurring outside the policy period. The Policy extends coverage for only a year, from January 1, 1986 to January 1, 1987. *See* Policy. The Amended Complaint alleges that "indecent, unsafe and unsanitary conditions have existed at Tyler House since March 3, 1984." *See* Amended Complaint ¶ 20. Apparently on the basis of this information, Landmark would conclude that the injuries suffered by the plaintiffs in the underlying suit did not occur during the policy period, and therefore claims based on those injuries fall outside the scope of the Policy. *See S. Freedman & Sons v. Hartford Fire Ins. Co.*, 396 A.2d 195.

This contention is without merit. For the duty to defend to be triggered, there need only be a potential that the Policy will cover the Tenant Council's claims. *See supra* 7. While the violations alleged in the Amended Complaint may have begun in 1984, they continued through 1986. The District of Columbia Court of Appeals has commented on how hard it is to determine precisely when, along such a continuum of time, a breach of the warranty of habitability occurs. *See Hines v. John B. Sharkey Co.*, 449 A.2d 1092, 1094 (D.C.1982). As a consequence, it cannot be said that there is no potential that Beltway will be found to have breached the warranty during the term of the Policy. Accordingly, Landmark has a duty to defend all the Tenant Council's claims. *See Continental Cas. Co. v. Cole*, 809 F.2d at 895; *Western Cas. & Surety Co. v. International Spas*, 130 Ariz. at 79, 634 P.2d at 6.

### B. Injury and Damages Requirements

Landmark further contends that Beltway must satisfy two related conditions before Landmark's duty to defend is triggered: There must be a physical injury and that injury must cause damages. These contentions are also without merit.

■ There is some precedent for defendant's contention that an injury is required. In *Great American Ins. Co. v. McKemie*, 244 Ga. 84, 259 S.E.2d 39 (1979), the Georgia Supreme Court faced a similar underlying suit. Two tenants had sued McKemie for failing to provide adequate rental housing, including failure to satisfy the housing code. The court ruled that McKemie's landlord-tenant liability policy required some bodily injury or property damage as a result of the violations before the duty to defend is activated. *McKemie*, however, addressed a quite different policy from the one at issue in this case. McKemie's insurance contract provided coverage only if the insured were sued for "damages on account of ... bodily injury or property damages." 244 Ga. at 84, 259 S.E.2d at 40. Landmark's Broad Form Comprehensive General Liability Endorsement, which covers specially defined "personal injuries" in addition to "bodily injuries," clearly provides wider coverage.

Landmark also attempts to tease this conclusion out of the text. In this view, personal injury is defined as *"injury* arising out of" one of the three types of covered offenses. *See* Policy, Broad Form Endorsement, § II(D) (emphasis added). Landmark contends that by the reiteration of the word injury the contract contemplates some sort of physical injury, whether to a person or to property. The mere violation of a the warranty of habitability does not result in such injury. *Ergo*, Landmark concludes, the Tenant Council's litigation does not trigger Landmark's liability.

The problem with this syllogism is that its major premise better reflects the conclusion desired by the logician than the conclusion dictated by the contract. Although in ordinary usage it would be perfectly reasonable to interpret personal injury to require some physical harm, that sort of injury is referred to as "bodily injury" and treated in § 3 of the Broad Form Endorsement. "Personal injury" is a contractual term, defined as "injury arising out of one or more" of the offenses numerated. Nothing in the Broad Form Endorsement suggests that the "injury" must be physical or to property. In fact, such a reading would exclude most of the offenses specifically include because claims for malicious

prosecution, libel, slander, eviction and violation of the right of privacy are not typically accompanied by physical injury. It must therefore be rejected.

■ In a related contention, Landmark argues that the Tenant Council's claims do not constitute the sort of "damages" necessary to trigger the duty to defend. The word is taken from the beginning of section II of the Broad Form Endorsement. According to Landmark, this use of "damages" indicates that plaintiffs in the underlying offense apparently must suffer an injury above and beyond that caused by the violation of their rights in order to trigger the duty to defend under the Broad Form Endorsement. Because, Landmark asserts, the Tenant Council is essentially seeking restitution of back rent, not compensation for damage done due to the alleged violations, its claims are outside the scope of the Policy.

This distinction is easier to state than it is to understand. The word "damages" normally refers to compensation for violations of rights as well as for any losses that result from that violation. See Webster's 571 (defining damages as "compensation or satisfaction imposed by law for a wrong or injury caused by a violation of a legal right"); Black's Law Dictionary 351–2 (defining damages as a "pecuniary compensation or indemnity, which may be recovered in the courts by any person who has suffered loss, detriment or injury"). Landmark's interpretation, thus, contradicts normal usage. Moreover, District of Columbia law explicitly recognizes that "a tenant may use breach of the implied warranty of habitability as the basis for an affirmative action for damages in this jurisdiction." George Washington University v. Weintraub, 458 A.2d at 47 (footnote omitted and emphasis added). In plaintiff's perceptive observation, Landmark really reads the contract to require physical "damage," but this is just another way of tacking a physical injury requirement on to the personal injury definition.

Landmark cites no cases in support of its contention, but research has revealed one pertinent case suggesting an analogous but narrower requirement. In Fragomeno v. Ins. Co. of the West, Inc., 207 Cal.App.3d 822, 255 Cal.Rptr. 111 (1989), the court held that the definition of personal injury requires "an offense" or a tort, rather than a violation of a contractual requirement. The Court reached this decision by construing the language "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages" to imply that the insurance contract covers only tort liability. The court then proceeded to find that leases were contractual and therefore the tenants' rights derived from that contract were contractual. Accordingly, the Court dismissed the Fragomeno's suit to require the insurance company to defend them in an unlawful detainer action.

The Fragomeno decision is unpersuasive because it is incompatible with District of Columbia law which controls here. See supra 1148. As mentioned before, precedent suggests that claims for the breach of the warranty are viewed as claims for damages. Moreover, the interpretation of the Fragomeno court is far from plain from the text of the Broad Form Endorsement; the most that can be said in its favor is that it is not plainly wrong. Under District of Columbia law, however, any ambiguity must be interpreted in favor of the insured. See Continental Cas. Co. v. Cole, 809 F.2d at 895. Because Fragomeno's characterization of the unlawful detainer action, or for that matter of a breach of warranty action, contradicts District of Columbia law which controls here, it must be rejected.

### C. Violation of a Penal Statute

■ Landmark's final contention is that the Policy does not cover the Tenant Council's claims because the Broad Form Endorsement excludes injuries "arising out of the willful violation of a penal statute or ordinance." Broad Form Comprehensive General Liability Endorsement § II(B)(2). Because the District of Columbia Housing and Fire Codes provides criminal penalties for certain violations, Landmark concludes it has no duty to defend against claims for any housing code violations. Statutes are not, however, considered penal merely be-

cause they contain some criminal penalties. They are penal only if the purpose of the provision applied is punitive. *See Ranger Ins. Co. v. Bal Harbour Club, Inc.,* 509 So.2d at 943; *see also* 3 *Sutherland on Statutory Construction* § 60.03, at 66 (4th ed. Sands 1974) (applying the same distinction when determining whether to apply the rule of leniency). Because the purpose of the warranty of habitability is to remedy harms to individuals, the provision of the housing code applied in this case is considerably more remedial than punitive. Moreover, even if the allegations of violations of the statutory warranty of habitability were excluded, Landmark would still have to defend against the Tenant Council's allegations that the insured violated the common law warranty of habitability.

## VI. CONCLUSION

The Broad Form Endorsement extends coverage to invasions of the right of private occupancy. One of those rights is the right to an occupiable premises, embodied in the implied warranty of habitability. By using the Broad Form Endorsement in the insurance contract in question, Landmark obligated itself to defend its insured against allegations of the breach of the warranty of habitability. As a consequence, Landmark has and has had an obligation to defend Beltway from all claims in that suit. Accordingly, an accompanying order will deny defendant's motion for summary judgment and grant the motion for partial summary judgment filed by plaintiff.

## ORDER

For the reasons stated in the accompanying order, it is this 19th day of September, 1990, hereby

ORDERED: that defendant's motion for summary judgment should be, and is hereby, denied; and it is further

ORDERED: that plaintiff's motion for partial summary judgment should be, and is hereby, granted.