**DECORATIVE CENTER OF HOUSTON and McDevitt & Street Co., Appellants,**

v.

**EMPLOYERS CASUALTY CO., Appellee.**

No. 13–91–429–CV.

Court of Appeals of Texas, Corpus Christi.

May 28, 1992.

Rehearing Overruled July 30, 1992.

---

Richard W. Mithoff, Scott Rothenberg, Mithoff & Jacks, Houston, for appellants.

Michael Phillips and Christopher L. Neal, Phillips & Akers, Houston, for appellee.

Before NYE, C.J., and BISSETT,[1] and SEERDEN, JJ.

## OPINION

BISSETT, Justice.

Decorative Center of Houston and McDevitt & Street Company ("appellants") appeal a summary judgment granted to Employers Casualty Company ("Employers Casualty") and the denial of their motion for summary judgment. We affirm.

In the mid–1980's, Decorative Center hired McDevitt & Street to build a commercial building at the corner of Woodway Drive and South Post Oak Lane in Houston, Texas. Decorative Center, the project's owner, and McDevitt & Street, its general contractor, purchased substantially identical liability insurance policies from Employers Casualty to protect themselves from liability to others that might arise out of the construction.

Joan P. Baker and Lovett Baker owned and occupied a home on land located directly adjacent to the site of the project. During construction, McDevitt & Street caused various forms of physical and mental harm to the Bakers' persons, property, and lifestyles, which continued despite the Bakers' oral and written protestations. The infractions included, but are not limited to, deliberately working later than the legally permitted hour, intentionally diverting water onto the Bakers' property, ruining the Bakers' landscaping, dropping heavy limbs on the Bakers' backyard, cursing the Bakers

1. Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't.Code Ann. § 74.003 (Vernon 1988).

when they complained to the workmen on duty, and generally making the Bakers' lives miserable. The Bakers brought the underlying suit against appellants on the following grounds: 1) nuisance (resulting in lost value), 2) deliberate institution of the design and construction of the complex which has destroyed the Plaintiffs' property, 3) negligent invasion of the Plaintiffs' interests due to breach of the duty to reasonably develop the property, resulting in damages to the property, 4) negligent placement of the garage, 5) intentional trespass and negligent trespass, 6) wrongful encroachment, 7) fraudulent representations to Plaintiffs, 8) intentional infliction of emotional distress, 9) breach of the August 18, 1980, contract, and 10) negligent performance of the contract.

Employers Casualty defended the suit, but elected to have appellants, the insureds, sign separate "non-waiver agreements" in light of the coverage problems associated with the Bakers' claims of intentional conduct. In the underlying suit the jury then rendered an adverse verdict against appellants. The jury awarded $544,000[2], consisting of $144,000 actual damages and $400,000 exemplary damages.

Employers Casualty notified appellant that, under the terms of the policies, in light of the jury's finding of intentional injury in the underlying suit, it had no responsibility for the jury's verdict, and that it was confident the case should not be appealed. Appellants voluntarily settled with the Bakers for $536,000[3] and looked to Employers Casualty for indemnification of this amount. Employers Casualty refused on the grounds that the judgment was not covered by the policies and brought a declaratory judgment action to have its rights and liabilities judicially determined.

The trial court agreed with Employers Casualty and rendered summary judgment in its favor on all issues raised in its motion for summary judgment, except that the policies were found to cover a small part of the "negligence" damages under Part 1 of the policies, which amount has already been paid to Decorative Center and McDevitt & Street. In addition, the judgment disposed of all issues appellants raised in their motion for partial summary judgment, as well as all issues raised in their counterclaim.

Parts 1 and 3 of the policies are crucial to the disposition of this appeal. Part 1 provides in relevant part:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

Coverage A. bodily injury or

Coverage B. property damage

to which this insurance applies, caused by an occurrence....

The policies define "occurrence" as follows:

"occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

Part 3, which deals with "personal injury liability coverage, provides in relevant part:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury (herein called "personal injury") sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the named insured's business:

. . . .

Group C—wrongful entry or eviction, or other invasion of the right of private occupancy.

In a recent case, our Supreme Court, speaking through Justice Gonzales, in *Na-*

---

**2.** Actual damages included $79,000 for intentional trespass, $11,000 for loss of use of property because of diversion of center, $25,000 for loss in value of the residence, and $29,000 for relandscaping costs.

**3.** Decorative Center paid the Bakers $360,000 as its proportionate share of the settlement, and McDevitt & Street paid $176,000 as its proportionate share.

*tional Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552 (Tex.1991), said:

> Generally, a contact of insurance is subject to the same rules of construction as other contracts. *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex.1987). If the written instrument is worded so that it can be given only one reasonable construction, it will be enforced as written. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984). However, if a contract of insurance is susceptive of more that one reasonable interpretation, we must resolve the uncertainty by adopting the construction that most favors the insured. *Barnett*, 723 S.W.2d at 667; *Ramsay v. Maryland Am. Gen. Ins. Co.*, 533 S.W.2d 344, 349 (Tex.1976); *Brown v. Palatine*, 89 Tex. 590, 35 S.W. 1060, 1061 (1896).

*Id.* at 555.

The provision at issue, "Group C, Part 3", which provides coverage for "other invasion of the right of private occupancy." Appellants argue that the provision, if not actually in their favor, is at least ambiguous, and therefore should be construed in their favor and against Employers Casualty because it drafted the policy and such construction is the only reasonable construction of the provision. Employers Casualty argues that the provision is not ambiguous and should be enforced as written. It further argues that coverage does not exist under any provision in the policies because Part 1 of the policies, pertaining to bodily injury and property damage, precluded coverage for intentional acts of trespass and nuisance, and because the acts complained of do not fall within the list of offenses covered under the policies' Personal Injury (Part 3) coverage. We hold that the provisions in the policies above-quoted are not ambiguous.

 Public policy prohibits permitting an insured to benefit from his own wrongdoing. "It is axiomatic in the insurance industry that one should not be able to insure against one's own intentional misconduct." *Ranger Insurance Company v. Bal Harbour Club, Inc.*, 549 So.2d 1005, 1007 (Fla. 1989), citing 12 J. Appleman, Insurance Law and Practice § 7031 (1981); 9 G. Couch, Couch Cyclopedia of Insurance Law § 39.15 (1980). The rationale behind the public policy is that the insured is more likely to engage in behavior which is harmful to society if he believes that he will not have to bear the financial costs of his intentional indiscretions. *Ranger*, 549 So.2d at 1007.

 Further, the policies should not be read piecemeal. When construing a particular provision in an insurance policy, all of the policy's provisions should be given effect, and the whole of the contract considered, with each clause being used to help interpret the other. In analyzing the provision in question, we consider that Coverage Part 1 specifically excludes intentional behavior of the type engaged in by appellant. The policies' drafters surely would not permit actions excluded under one portion of the policy to be covered under a subsequent part.

Appellants further contend that the facts in this case constituted "other invasion of the rights of private occupancy." The phrase in question is not a legal term or phrase of art. *Beltway Management Co. v. Lexington Landmark Ins. Co.*, 746 F.Supp. 1145, 1156 (D.D.C.1990). Absent evidence to the contrary, words and phrases in a written contract are accorded their ordinary, popular, and commonly-accepted meanings. *TM Productions, Inc. v. Nichols*, 542 S.W.2d 704, 708 (Tex.Civ.App.—Dallas 1976, no writ), citing *Pan American Ins. Co. v. Cooper Butane Co.*, 157 Tex. 102, 300 S.W.2d 651, 654–55 (1957) and *Magnolia Warehouse & Storage Co. v. Davis & Blackwell*, 108 Tex. 422, 195 S.W. 184, 186 (1917).

Webster's Ninth New Collegiate Dictionary defines "occupancy" as "the fact or condition of holding, possessing, or residing in or on something," and defines "private" as "intended for or restricted to the use of a particular person, group or class." Restatement of the Law of Property, § 1 defines "right" as a "legally enforceable claim of one person against another, that the other shall do a given act, or shall not do a given act."

Decorative Center and McDevitt & Street's primary argument is that, because the Bakers' ability to *use* their property was interfered with, that the interference necessarily constitutes an "other invasion of the right of private occupancy," thus triggering coverage. We do not agree. "Occupancy" normally refers to the state of being inhabited. The right of "private occupancy" can only refer to those rights associated with an individual's act of inhabiting the premises, and not to rights associated with the individual's right to use and enjoy the inhabited premises. The Group C Offenses are meant to cover only landlord-tenant situations, or, if extended, only similar instances where the defendant insured has some superior right of occupancy to that of the plaintiff. Most of the cases from across the country which have interpreted this provision have been either landlord-tenant cases, municipality-property owner cases, or restaurant owner-restaurant-patron cases.[4] All of the cases counsel for appellants cite are landlord-tenant cases or property owner-municipality cases.[5]

*Martin v. Brunzelle v. State Farm Fire & Casualty Co.*, 699 F.Supp. 167 (N.D.Ill. 1988), involved a prospective tenant who filed suit against a landlord for refusing to rent or show her an apartment. The landlord's insurance carrier (State Farm) refused coverage under the Personal Injury portion of the policy on the ground that the Group C Offense collection did not cover racial discrimination. In granting the carrier's motion for summary judgment, the Court held:

> State Farm is indeed correct. "Other invasion of the right of private occupancy" is simply part of a more complete definition of "personal injury," following

---

**4.** *Larson v. Continental Casualty Co.*, 377 N.W.2d 148 (S.D.1985) (owner of apartment sought coverage for racial discrimination action brought by tenant); *Cincinnati Ins. Co. v. Davis*, 153 Ga.App. 291, 265 S.E.2d 102 (1980) (landlord sues for coverage after entering tenant's property and converting tenant's personal items); *Beltway Management Co. v. Lexington–Landmark Ins. Co.*, 746 F.Supp. 1145 (D.D.C. 1990) (landlord's action against primary insurer for failing to defend against tenant's action alleging breach of warrant of habitability); *Town of Stoddard v. Northern Security Ins. Co.*, 718 F.Supp. 1062 (D.N.H.1989) (town sues insurance company for defense costs incurred from action against town for amending zoning ordinance against property owner); *Town of Epping v. St. Paul Fire & Marine Ins. Co.*, 122 N.H. 248, 444 A.2d 496 (1982) (town's declaratory judgment action for coverage for civil rights violation); *Town of Goshen v. Grange Mutual Ins. Co.*, 120 N.H. 915, 424 A.2d 822 (1980) (suit by property owner against town for civil rights violation); *Western Casualty & Surety Co. v. Int'l Spas of Arizona, Inc.*, 130 Ariz. 76, 634 P.2d 3 (App.1981) (action by insurer seeking declaration of duty to defend where insured landlord wrongly evicted tenant); *Providence Washington Ins. Co. v. City of Valdez*, 684 P.2d 861 (Alaska 1984) (insured city seeking coverage from insurer for action by fish processing company for city's wrongful termination of lease); *State Farm Fire & Casualty Co. v. Westchester Investment Co.*, 721 F.Supp. 1165 (C.D.Calif.1989) (insured apartment owner sought coverage for racial discrimination).

**5.** *Town of Goshen v. Grange Mutual Ins. Co.*, 120 N.H. 915, 424 A.2d 822 (1980) (property owner

alleged that the town planning board created economic hardships that destroyed the viability of the property owner's development project and deprived him of free enjoyment of his property. Held, such allegations were covered as "other invasions of the right of private occupancy."); *Town of Stoddard v. Northern Security Ins. Co.*, 718 F.Supp. 1062 (D.N.H.1989) (property owner alleged that the town planning board's enactment of zoning amendment deprived owner of intended use of property, and caused substantial loss to the value of the property. Held, such allegations "constitute personal injury to plaintiffs under the definition in the Broad Form Endorsement" [i.e. other invasions of the right of private occupancy] ); *Beltway Management Co. v. Lexington–Landmark Ins. Co.*, 746 F.Supp. 1145 (D.D.C.1990) (tenant's action alleged breach of implied warranty of habitability for failure to perform necessary repairs. "The phrase "other invasion of the right of private occupancy' is ambiguous, and both parties offer plausible interpretations." 746 F.Supp. at 1150. Held, breach of implied warranty of habitability constitutes "other invasion of the right of private occupancy' and is covered under insurance policy); *Titan Holdings Syndicate, Inc. v. City of Keene*, 898 F.2d 265 (1st Cir.1990) (landowner's sued the City for damages sustained by them as a result of the City's operation of a sewage treatment plant, alleging that such activity unnecessarily interfered with their quiet enjoyment of their homestead. An insurance company had issued a policy to the City of Keene containing coverage against "other invasion of the right of private occupancy." Held, that the policy provided coverage for the damages sustained by the landowner).

directly on the heels of "wrongful entry or eviction." Ejusdem generis principles draw on the sensible notion that words such as "or other invasion of the right of private occupancy" are intended to encompass actions of the same general type as, though not specifically embraced within, "wrongful entry or eviction." Those two terms have commonly understood meanings.

*Id.* at 170.

Having found the term "other invasion of the right of private occupancy" to be inextricably linked to the terms which immediately precede it, the Court addressed the insured's assertion of ambiguity as follows:

> Where Brunzelle (and for that matter Gardner) err in urging the ambiguity of the Policy provision is in failing to give full and normal content to the word "right." In normal English, ... *a "right" is a legally enforceable claim of one person against another* (see generally Restatement (Second) of Property § 1.2 (1977).... *Thus State Farm is correct in contending (Mem. 3) that the phrase "other invasion of the right of private occupancy" provides coverage only if there exists a landlord-tenant relationship or if the plaintiff has a "vested property right."*

*Id.* at 170. (Emphasis added).

In *Beltway Management Co. v. Lexington–Landmark Ins. Co.*, 746 F.Supp. 1145 (D.D.C.1990), also cited by appellants, the District of Columbia District Court approved of Beltway's interpretation of the Group C Offenses by stating,

> A broader interpretation such as Beltway's which reads "other invasion of the right of private occupancy" to encompass a broad range of claims *against landlords* is more faithful to the text of the Broad Form Endorsement. Given modern landlord-tenant law, that broad range must include claims for the breach of the warranty of habitability.

*Id.* at 1152. (Emphasis added).

Of special significance to Employers Casualty in this case is the Court's reasoning for its holding:

> Read in context, that section (the Group C Offenses) extends coverage to a broad range of claims against landlords. The section includes claims for eviction, *an act primarily done by landlords because eviction implies a superior title to the property.*

*Id.* at 1153. (Emphasis added).

The Court interpreted the coverage context of the phrase "other invasion of the right of private occupancy," holding:

> [I]t follows that the second part ("other invasion ...), the part at issue, covers a third category of claims—*those arising from a landlord's deprivation of a tenant's rights.*

*Id.* at 1153. (emphasis added)

In concluding its holding in this case, the Court held:

> Although the meaning of the phrase "other invasion of the right of private occupancy" may not be plain from the language taken in isolation, once other tools of interpretation are applied it becomes clear that the phrase includes breaches of the implied warranty of habitability. *Read in context, section II(D)(2) refers to claims against landlords and "other invasion[s] of the right of private occupancy" to a broad category of those claims*, a category separate from intrusions upon possessory rights like wrongful entry or eviction.

*Id.* at 1156. (emphasis added).

■ Appellants had no legal right to interfere with any of the Bakers' *rights* in their property. They did interfere with the Bakers' use and enjoyment of their property by intentionally trespassing on the Bakers' land in various ways, and by committing various nuisances against the Bakers. Nuisance and trespass are covered, if at all, under Coverage Part 1 of the policies, so long as the acts are committed negligently, and not intentionally.

We hold that coverage does not exist under any portion of either of the two policies because Part 1 of the policies, pertaining to bodily injury and property damage, precludes coverage for intentional acts of trespass and nuisance, and because the

acts are not within the list of offenses covered under the policies' Personal Injury (Part 3) coverages. The Group C offense of "other invasion of the right of private occupancy" does not apply outside the landlord-tenant scenario, or when the occupier has a vested interest in the occupancy of the premises. Appellants did not invoke or interfere with the Baker's rights of private occupancy of their property. They did, however, intentionally invoke or interfere with their right to use and enjoy their property, which does not fall within the coverage of the policies.

Assuming, for the sake of argument, that appellants are covered by Parts 1 and 3 of the policies, there is another reason why they cannot prevail in this appeal. Exclusion (b) of the policies, reads:

This insurance does not apply:

(b) to personal injury out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured; precludes any coverage which might have been found to exist.

▊ With regard to trespass, the Court's Charge in the underlying suit defined trespass as "entering, or causing other persons or things to enter, another's property without the owner's consent." The jury found appellants liable for wilful and intentional trespass. Consequently, the Jury found every element required to convict appellants on a charge of criminal trespass. Paraphrased, Tex.Penal Code Ann. § 30.05 (Vernon 1991) holds that a violation will lie when a person enters or remains on property belonging to another without effective consent when he had notice that entry was forbidden, or when he received notice to depart but failed to do so. The Bakers notified appellants that they wanted the entries by their personnel and equipment onto their property to cease. Appellants, however, persisted in their behavior. The jury's findings, combined with the definition of trespass in the charge, are sufficient for us to conclude that the behavior of appellants violated a penal statute, precluding all available coverage.

Appellants further assert that "Employers is not entitled to summary judgment because its motion for summary judgment fails to negate coverage under Part 1 or Part 2a of the insurance policies in question." Part 2 of the policies provided for protection from liability assumed by appellants under a contract; no contract appears in the summary judgment evidence before us in this appeal. Therefore, we do not consider the coverage under Part 2a of the policies for any reason whatever.

With regard to the assertion that the motion for summary judgment fails to negate coverage under Part 1, appellants are partially correct. The motion states:

[E]mployers would inform the Court that no, or minimal, coverage is afforded under the General Liability portions of the policies because of the intentional nature of the injuries sustained.

The motion does not ask that coverage under Part 1 be "negated," but rather the motion informs the trial court that "no or minimal" coverage exists under Part 1 of the policies. The court took this into consideration in its judgment where it stated:

It is ORDERED, ADJUDGED, and DECREED that the Court finds that there is coverage under Part 1 of the Policies for damages related to the common law negligence attributed to the Insureds/Plaintiffs by the jury in Cause No. 85–57046 in the 270th Judicial District Court, Harris County, Texas. Accordingly, Employers Casualty Company shall pay the Insured, Decorative Center and McDevitt & Street the sum of $54,000 in actual damages as found by the jury for the Insureds'/Plaintiffs' negligent acts, plus interest per annum on that amount from February 26, 1990, to the date said sum is paid; further ...

While coverage under Part 1 was not completely "negated," the issue of "no or minimal" coverage under Part 1 was completely disposed of by the judgment in that Employers Casualty's motion for summary judgment stated that "minimal" coverage may be found to be owed. Appellants, the insureds, have been paid all monies owed them under the judgment. As Part 2a

coverage is not applicable and the trial court's judgment was properly rendered on the issue pertaining to Part 1, the assertion that "Employers is not entitled to summary judgment because its motion for summary judgment fails to negate coverage under Part 1 or Part 2a of the insurance policies in question" cannot be sustained.

Appellants further contend that the trial court erred in denying their motion for summary judgment, which would have entitled them to attorney's fees and to an award of attorney's fees and to pre-judgment interest. We do not agree. The trial correctly granted Employers Casualty's motion for summary and denied appellants similar motion.

The judgment of the trial court is affirmed.