

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-22-1999

# New Castle County v. Natl Union Fire Ins

Precedential or Non-Precedential:

Docket 98-7091

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

## Recommended Citation

"New Castle County v. Natl Union Fire Ins" (1999). *1999 Decisions.* Paper 107.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/107

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 23, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-7091

NEW CASTLE COUNTY, DELAWARE,
        Appellant

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

(D.C. Civil No. 96-504-LON)
District Judge: Honorable J.J. Longobardi

Argued December 7, 1998

BEFORE: STAPLETON and NYGAARD, Circuit Judges,
and GOLDBERG, Judge*

(Filed April 23, 1999)

        Peter J. Walsh, Jr., Esq. (Argued)
        Peter L. Tracey, Esq.
        Potter Anderson & Corroon LLP
        Hercules Plaza
        1313 N. Market Street
        P.O. Box 951
        Wilmington, DE 19899
         Attorneys for Appellant
_____

*The Honorable Richard W. Goldberg, Judge for the United States Court
of International Trade, sitting by designation.

James F. Bailey Jr., Esq.
Christopher J. Sipe, Esq. (Argued)
Bailey & Wetzel, P.A.
716 N. Tatnall Street
P.O. Box 2034
Wilmington, DE 19899
 Attorneys for Appellee

OPINION OF THE COURT

GOLDBERG, Judge:

## I. INTRODUCTION

This case reviews whether a provision in an insurance policy is ambiguous. Upon review of the relevant case law and the tenets of contract construction, we find there are two reasonable interpretations of the policy language. Therefore, pursuant to Delaware law, we conclude that the provision is ambiguous, and we construe it in favor of the insured. We remand the case to the District Court for further findings in accordance with this decision.

## II. BACKGROUND

This case addresses whether particular language contained in a "personal injury" provision of a comprehensive general liability ("CGL") insurance policy is ambiguous. The CGL policy at issue is a standard form policy prepared by the Insurance Service Office ("ISO"). It provides that the insurer will defend and indemnify the insured against claims alleging damages for "personal injury." The personal injury offenses covered under the policy include definition 10(c), which reads as follows:

> 10. "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses: . . .
>
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person

2

> occupies by or on behalf of its owner, landlord or
> lessor.

App. of Appellant, at A141 (CGL Policy No. GL 590-62-18-
RA).

The above language gave rise to a declaratory judgment
action brought on October 21, 1996 by New Castle County,
Delaware ("the county") in the District Court for the District
of Delaware against National Union Fire Insurance
Company of Pittsburgh, Pennsylvania ("National").1 Between
1991 and 1994, the county purchased a series of CGL
policies from National (collectively "the CGL policy" or "the
policy").2 When Frank E. Acierno, a developer, filed three
lawsuits against the county (collectively, "the Acierno
actions"), the county turned to National to defend and
indemnify it against the suits. In general, the Acierno
actions alleged that the county violated Acierno's
constitutional rights by re-zoning or refusing to issue
building permits for his property. More specifically, the
actions were styled as follows: (1) the first suit alleged
violations of Acierno's constitutional rights for failure to
issue a commercial building permit on a parcel of land
owned by Acierno;3 (2) the second alleged that an ordinance

_____

1. The District Court based its jurisdiction on diversity of citizenship.
See
28 U.S.C. S 1332 (1994).

2. The county purchased three CGL policies from National: Policy No. GL
590-44-26-RA, effective July 1, 1991 to July 1, 1992; Policy No. GL 590-
62-18-RA, effective July 1, 1992 to July 1, 1993; and Policy No. GL 590-
73-01-RA, effective July 1, 1993 to July 1, 1994. As the District Court
noted, these policies do not differ from one another in any significant
way. See New Castle County, Delaware v. National Union Fire Ins. Co. of
Pittsburgh, PA, No. CIV. A. 96-504 LON, 1997 WL 809207, at *1 n.1 (D.
Del. Dec. 30, 1997) ("New Castle County v. National"). National has
disclaimed coverage under Policy No. 590-44-26-RA, the one it considers
to have been in effect when the first two actions against the county were
filed. Br. of Appellee, at 7. National has not declared its coverage
position
with respect to the other two CGL policies.

3. Acierno v. Mitchell, No. Civ. A. 92-384-SLR ("Acierno I"). Acierno
moved
for a preliminary injunction, which the trial court granted on December
30, 1992. On appeal, this circuit held that the dispute was not ripe for
judicial review, vacated the lower judgment, and remanded the case with
instructions to dismiss it without prejudice. See Acierno v. Mitchell, 6
F.3d 970, 977-78 (3d Cir. 1993).

3

passed by the county to re-zone one of his properties violated his civil rights;4 and (3) the third, filed after the county's final denial of the building permit, essentially restated the same facts and violations as the first suit.5

Because the county believed that the Acierno actions state a claim for "invasion of the right of private occupancy" as defined in definition 10(c) of the CGL policy, it sought to have National defend and indemnify it in those suits. National disclaimed coverage under the CGL policy for the Acierno actions.6 The county then filed the declaratory judgment action underlying this appeal.

National responded to the County's declaratory judgment action with two counter-arguments. First, National asserted that the offense of "invasion of the right of private occupancy," as contemplated by definition 10(c), is limited to tangible interference with a possessory interest in property. Since the Acierno actions did not allege interference with a possessory interest, but rather with the use and enjoyment of land, National asserted that the actions do not fall within the coverage of definition 10(c) and, consequently, National had no obligation to defend or indemnify the county. Second, National argued that based on the "by or on behalf of" language in definition 10(c),

_____

4. Acierno v. Cloutier, No. Civ. A. 92-385-SLR ("Acierno II"). This case was disposed of by a joint stipulation approved by the District Court on October 24, 1997. Br. of Appellant, at 12.

5. Acierno v. New Castle County, No. Civ. A. 93-579-SLR ("Acierno III"). This case was tried in the Spring of 1997. According to the county, it was required to issue a building permit and the case was eventually settled in accordance with the Acierno II stipulation. Br. of Appellant, at 14.

6. National has actually only disclaimed coverage under the CGL policy for Acierno I and II. Yet, the District Court concluded in its opinion that, although National has apparently not declared its official coverage position with regard to Acierno III, the issue of National's obligation to defend and indemnify the county in Acierno III was nonetheless ripe for adjudication, in part because it is likely that National would disclaim any obligation to defend or indemnify the county in connection with Acierno III. See New Castle County v. National, 1997 WL 809207 at *3-4. We have no occasion to disrupt the District Court'sfinding on this matter.

4

coverage is available only when the insured commits an "invasion" as the owner, landlord, or lessor of the property at issue. Since the county does not claim to be the owner, landlord, or lessor of any Acierno properties, National maintained that it had no obligation to defend the county in those suits.

On December 30, 1997, the District Court issued an opinion granting summary judgment to National, holding that definition 10(c) unambiguously "contemplates coverage for acts such as evictions, entries and invasions committed by one acting by or on behalf of the property's owner, landlord or lessor." New Castle County v. National, 1997 WL 809207, at *7. According to the District Court, the county cannot be considered the owner, landlord, or lessor of the property and therefore National had no obligation to defend or indemnify the county. Having thus held, the court explicitly declined to reach the question of whether the constitutional violations alleged in the Acierno actions "constitute an invasion of the right of private occupancy." New Castle County v. National, 1997 WL 809207, at *8.

This appeal ensued. The county asserts that the District Court erred in finding that definition 10(c) only provides coverage for acts committed by or on behalf of an owner, landlord, or lessor. On appeal, the county argues that definition 10(c) is ambiguous and should be construed in its favor. The issue presented to this Court on appeal is thus a narrow one. In short, we must determine whether definition 10(c) is ambiguous.

Because the issue addressed in this opinion is one of first impression under Delaware law, we must predict how the Delaware Supreme Court would resolve it. After examining the parties' conflicting interpretations, relevant case law, tenets of contract construction, and the policy's language and purpose as a whole, we conclude that definition 10(c) is ambiguous and must be construed in favor of the county. Like the District Court we, too, will not reach the question of whether the allegations made in the Acierno actions state a colorable claim for an invasion of the right of private occupancy. Accordingly, the District Court's determination that definition 10(c) is unambiguous will be reversed, and this case will be remanded to the District Court to

determine, in light of our holding, whether the violations alleged in the Acierno actions constitute an invasion of the right of private occupancy.

III. DISCUSSION

A. Scope and Standard of Review

We assert jurisdiction over this appeal under 28 U.S.C. S 1291. Jurisdiction below was premised on diversity of citizenship, and the District Court properly applied the substantive law of Delaware. See Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938). Since the Delaware Supreme Court has yet to address the issue presented by this appeal, we must predict how that court would decide it. See Epstein Family Partnership v. Kmart Corp., 13 F.3d 762, 766 (3d Cir. 1994).

The issue before this Court, simply put, is whether definition 10(c) is ambiguous. Whether an insurance policy is ambiguous is a question of law, see International Union v. Mack Trucks, Inc., 917 F.2d 107, 111 (3d Cir. 1990), and we have plenary review over the issue. See Pacific Indem. Co. v. Linn, 766 F.2d 754, 760 (3d Cir. 1985)). And, as a general rule, we will consider only issues passed upon by the court below. See, e.g., Selected Risks Ins. Co. v. Bruno, 718 F.2d 67, 69 (3d Cir. 1983).

B. Delaware Law on Interpreting Insurance Policies

As we must predict how the Delaware Supreme Court would decide this issue, it is necessary that wefirst understand Delaware law on this matter. Before an insurer is obligated to defend or indemnify a policyholder, the insured must demonstrate that coverage is available under the policy. See New Castle County v. Hartford Accident and Indem. Co., 933 F.2d 1162, 1181 (3d Cir. 1991) ("New Castle v. Hartford I") (applying Delaware law). An insurer's duty to defend is broader than its duty to indemnify, see Charles E. Brohawn & Bros., Inc. v. Employers Commercial Union Insurance Co., 409 A.2d 1055, 1058 (Del. 1979), but "is limited to suits which assert claims for which it has assumed liability under the policy." Continental Cas. Co. v. Alexis I. duPont School Dist., 317 A.2d 101, 103 (Del. 1974). "[W]here there exists some doubt as to whether the

6

complaint against the insured alleges a risk insured against, that doubt should be resolved in favor of the insured." Id. at 105. Most importantly therefore, an insurer is "required to defend any action which potentially states a claim which is covered under the policy." New Castle County v. Hartford Accident and Indem. Co., 673 F. Supp. 1359, 1367 (D. Del. 1987) ("New Castle v. Hartford II"). Thus, in this case, if the Acierno actions potentially state a claim that is covered under definition 10(c), National is required to defend the county in those actions.

Whether the Acierno actions potentially state a claim for which National has assumed liability depends upon how we interpret definition 10(c). As a basic matter, Delaware law requires us to interpret insurance contracts "in a common sense manner." SI Management L.P. v. Wininger, 707 A.2d 37, 42 (Del. 1998); see also New Castle v. Hartford I, 933 F.2d at 1189 (according the terms of an insurance policy their "ordinary, usual meaning"). We must also examine the disputed language in the context of the entire policy. See, e.g., New Castle v. Hartford I, 933 F.2d at 1194 (ascertaining whether a term "is ambiguous in the context of a specific insurance policy"); New Castle County v. Hartford Accident and Indem. Co., 970 F.2d 1267, 1271 (3d Cir. 1991) ("New Castle v. Hartford III") (construing a term "in context with the function of the [insurance] policy"); see also Porter v. Pathfinder Servs., Inc., 683 A.2d 40, 42 (Del. 1996) (construing language of an employment contract in its context as a whole).

"Absent some ambiguity, Delaware courts will not destroy or twist policy language under the guise of construing it," Rhone-Poulenc Basic Chemicals Co. v. American Motorists Insurance Co., 616 A.2d 1192, 1195 (Del. 1992) (citation omitted), because "creating an ambiguity where none exists could, in effect, create a new contract with rights, liabilities and duties to which the parties ha[ve] not assented." Hallowell v. State Farm Mut. Auto. Ins. Co., 443 A.2d 925, 926 (Del. 1982) (citations omitted). When policy language is ambiguous, however, under Delaware law this Court must apply the doctrine of contra proferentem. See Oglesby v. Penn Mut. Life Ins. Co., 877 F. Supp. 872, 881 (D. Del. 1994) (applying Delaware law). That is, ambiguous

7

language must be construed against the drafter and in conformance with the reasonable expectations of the insured. See Swfte Int'l, Ltd. v. Selective Ins. Co. of Am., No. Civ. A. 94-44-SLR, 1994 WL 827812, at *5 (D. Del. Dec. 30, 1994); see also Steigler v. Ins. Co. of N. Am., 384 A.2d 398, 400 (Del. 1978).

The premise underlying the principle of contra proferentem is that an insurance contract is one of adhesion. See State Farm Mut. Auto. Ins. Co. v. Johnson, 320 A.2d 345, 347 (Del. 1974). As the Delaware Supreme Court recently explained,

> [T]he insurer . . . is the entity in control of the process of articulating the terms [of an insurance contract]. The other party . . . usually has very little to say about those terms except to take them or leave them or to select from limited options offered by the insurer. . . . Therefore, it is incumbent upon the dominant party to make the terms clear. Convoluted or confusing terms are the problem of the insurer . . . -- not the insured . . . .

Penn Mut. Life Ins. Co. v. Oglesby, 695 A.2d 1146, 1149-50 (Del. 1997). As noted earlier, due to the insurer's dominant position, when an ambiguity is found in insurance policy language, we must construe the language against the insurer as a matter of Delaware law. And therefore, unlike with other types of contracts, we need not inquire into the parties' actual intent. See New Castle v. Hartford I, 933 F.2d at 1182 n. 43; Oglesby, 877 F. Supp. at 881 (noting that "Delaware courts . . . consistently constru[e] ambiguities in favor of the insured as a matter of law.").

Because ambiguous language is construed against the insurer as a matter of law, we take special note of Delaware law for determining whether language is ambiguous. "The settled test for ambiguity is whether the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." Phillips Home Builders, Inc. v. Travelers Ins. Co., 700 A.2d 127, 129 (Del. 1997) (internal quotation marks and citation omitted). An insurance policy is not ambiguous, however, "merely because two conflicting

interpretations may be suggested. Rather, both interpretations must reflect a reasonable reading of the contractual language." Aetna Cas. and Sur. Co. v. Kenner, 570 A.2d 1172, 1174 (Del. 1990). Thus, we must examine, not only whether the county's reading of definition 10(c) is possible, but also whether it is reasonable. See id.; see also New Castle v. Hartford III, 970 F.2d at 1271 (rejecting one reading of the policy language at issue because, while possible, it was not reasonable).

C. Definition 10(c) is Ambiguous

Against this backdrop of Delaware law, we turn to the task before us of determining whether definition 10(c) is ambiguous. First, we consider the respective arguments of the parties and the relevant case law. We attempt to balance the weight of authority on this precise issue, but find that additional guidance is needed. Consequently, we turn to the tenets of contract construction. Finally, we examine the disputed language within the policy as a whole. Using these tools, we conclude that definition 10(c) is ambiguous.

National and the county assert different interpretations of the phrase "by or on behalf of its owner, landlord or lessor." National argues, and the District Court held, that the phrase can only mean that the wrongful act -- the eviction, entry or invasion -- was done "by or on behalf of [the premises'] owner." The county replies that it is equally logical, or at least reasonable, to interpret the phrase as explaining how the premises in question is occupied. In its view, the language indicates that the "room, dwelling or premises" must have been occupied "by or on behalf of its owner, landlord or lessor." This distinction is critical because the county's reading does not require that the wrongful act have been instigated by the "owner, landlord or lessor" of the premises while National's does. As the county clearly was not an "owner, landlord or lessor" of Acierno's property, the latter interpretation is the only one under which the county can claim coverage.

1. National's Interpretation of Definition 10(c)

Under National's construction, to qualify for coverage, the invasion offense must be committed "by or on behalf of "

9

the owner, the landlord, or lessor. Applied to the facts in this case, National would be obligated to defend the county against claims of invasion only if the county were the owner, landlord, or lessor of the property at issue in the Acierno actions.

In support of this position, National cites three cases: (1) United States Fidelity and Guaranty Co. v. Goodwin, 950 F. Supp. 24 (D. Me. 1996); (2) Terramatrix, Inc. v. United States Fire Insurance Co., 939 P.2d 483 (Colo. Ct. App. 1997); and (3) TGA Development, Inc. v. Northern Insurance Co. of New York, 62 F.3d 1089 (8th Cir. 1995). National's citations are instructive, yet ultimately we find the reasoning in these cases unavailing.

In Goodwin, the court held that language identical to definition 10(c) "unambiguously requires that the wrongful entry be committed by the owner, landlord, or lessor of the room, dwelling, or premises." 950 F. Supp. at 27. We fail to understand the logic underlying Goodwin, however. Reviewing the same phrase, i.e.,

> [t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor,

the Goodwin court found that the word "its" modifies "room, dwelling or premises," and not "person." 950 F. Supp. at 27. Yet, replacing "its" with any of the words the court found "its" to modify does not foreclose either National or the county's reading of the provision. For example, consider the following: "The wrongful eviction from a room that a person occupies by or on behalf of the room's owner, landlord or lessor." Or, consider this: "The invasion of the right of private occupancy of a premises that a person occupies by or on behalf of the premises' owner, landlord or lessor." Both examples illustrate the flaw in the Goodwin court's reasoning; that is, neither clarifies whether "by or on behalf of " requires the offense to be committed by the owner, landlord, or lessor, or whether it defines the possessory interest of the claimant. Thus, determining what "its" modifies neither strengthens nor undermines either of the competing interpretations of definition 10(c) forwarded by National and the county.

10

In Terramatrix, the Colorado Court of Appeals also found language identical to definition 10(c) "unambiguous and applicable only to entries, evictions and invasions committed by or on behalf of the owner, landlord or lessor." 939 P.2d at 489. Although the Terramatrix court professed to be "persuaded by the reasoning of other courts," it cited only Goodwin in support of its conclusion that the provision was unambiguous. Id. As we explained above, the reasoning in Goodwin is flawed at best. Because the Terramatrix court does not offer any analysis of its own, without more, we cannot accord significant weight to its holding.

In TGA Development, the Eighth Circuit commented that it "doubt[ed] very much that coverage is available under" a personal injury provision identical to definition 10(c) because the insured could not "even colorably be characterized as owner, landlord, or lessor." TGA Development, 62 F.3d at 1091 (internal quotation marks omitted). National points to this language to bolster its claim that the insured must be the owner, landlord, or lessor to qualify for coverage under definition 10(c). The Eighth Circuit's commentary is purely dicta, however. Indeed, the TGA court explicitly "pass[ed] over" the issue presented by this appeal. See id. Instead, the court based its conclusion that coverage was not available on the policy's exclusion of coverage clause prohibiting recovery "for personal injury for which the insured has assumed liability in a contract or agreement." See 62 F.3d at 1091. The dicta from TGA Development has "no binding authority" on this Court. Gruber v. Price Waterhouse, 911 F.2d 960, 967 (3d Cir. 1990).[7]

In addition to the above cases, the District Court also cited Patel v. Northfield Insurance Co., 940 F. Supp. 995 (N.D. Tex. 1996), for the proposition that definition 10(c) is unambiguous. In Patel, the court found that language identical to definition 10(c) was unambiguous. The case is

_____

7. We can, of course, accord dicta as much weight as we deem appropriate. See, e.g., Girard Trust Co. v. United States, 161 F.2d 159, 162 (3d Cir. 1947) (recognizing that although a finding was dicta, it was "made after a careful consideration of authorities").

11

different in one fundamental respect, however. The Patel court based its finding on Decorative Center v. Employers Casualty, 833 S.W.2d 257, 260 (Tex. App. 1992), which examines language different from definition 10(c). In Decorative Center, the personal injury offense was "other invasion of the right of private occupancy." Id. at 1001. Importantly, it does not include the "by or on behalf of" language that forms the basis for this appeal. The Patel court dismissed the difference between the Decorative Center language and language identical to definition 10(c) as having "no practical effect." Id. at 1001 n.10. We, however, find that language critical to this case. Indeed, the sole focus of this appeal is definition 10(c)'s "by or on behalf of" language.8

In sum, National has offered some authority that suggests definition 10(c) is not ambiguous. Upon close inspection of the cases, however, we find the authority to be unpersuasive or of limited precedential value. As such, standing alone, the authority forwarded by National does not resolve whether definition 10(c) is clear or ambiguous. With that we turn to the county's interpretation of definition 10(c).

2. The County's Competing Interpretation of Definition 10(c)

The county urges this Court to accept an alternative reading of definition 10(c) as reasonable. According to the county, the phrase "by or on behalf of" defines the possessory interest of the person aggrieved in 10(c). Under this interpretation, in order for the insured to invoke coverage for an invasion, the claimant must have the right to occupy the premises, either as owner, landlord, or lessor, or with the permission of the owner, landlord, or lessor.

_____

8. The ISO added the "by or on behalf of" language to definition 10(c) in 1986. Thus, in addition to Patel, we reject Liberty Mutual Insurance Co. v. East Central Oklahoma Electric Cooperative, 97 F.3d 383 (10th Cir. 1996), Martin v. Brunzelle, 699 F. Supp. 167 (N.D. Ill. 1988), and Harbor Insurance Co. v. Anderson Leasing, Inc., 1989 WL 112532 (Del. Super. Ct. Sept. 27, 1989) as persuasive precedent, because they too are based on the pre-1986 version of definition 10(c).

In support of its interpretation, the county cites United States v. Security Management Co., 96 F.3d 260 (7th Cir. 1996). In that case, the Seventh Circuit examined language identical to definition 10(c). Although the District Court found the provision to be ambiguous, the Seventh Circuit read the language beginning "that a person occupies . . ." as unambiguously "refin[ing] the nature of the prerequisite `right' of private occupancy." Id. at 265. In other words, in the view of the Security Management court, the language at issue "limit[s] coverage to those instances where `a person occupies by or on behalf of its owner, landlord or lessor' " and functions to "exclude[ ] at least unapproved sub-lessees from coverage." Id.

The Seventh Circuit's commentary on the meaning of the clause again is dicta, however. Its holding is based on the fact that the litigants claiming an invasion in that case "unquestionably lacked any . . . enforceable claim of occupancy," Id. at 265; indeed, the litigants were "testers," or civil rights activists who posed as apartment-hunters but who did not actually rent a unit. Id. at 265. As we noted earlier, we are not bound by this dicta, although we may consider it in our analysis if we deem it appropriate. See supra n.7.

The county also cites Blackhawk – Central City Sanitation District v. American Guaranty & Liability Insurance Co., 856 F. Supp. 584 (D. Colo. 1994), for the proposition that definition 10(c) is ambiguous. In that case, the court was asked to construe language identical to definition 10(c), and the parties' arguments mirror those presented here. Appellee contended that language identical to definition 10(c) "requires that the eviction, entry or invasion be by or on behalf of the owner, landlord or lessor of the premises." Id. at 590. The appellant, on the other hand, argued that the provision could "be read to modify, not the party who evicts, enters or invades, but rather on whose authority the current occupant holds the property." Id. Faced with these competing interpretations, the court deemed the provision ambiguous and construed the language in favor of the insured. See id. The Blackhawk court, however, did not elaborate on how it reached its conclusion and thus provides us with little guidance.

13

In sum, the county has presented this Court with authority to suggest that definition 10(c) is ambiguous. The case law it cites -- Security Management and Blackhawk -- however, is either dicta or void of analysis and thus it does not, by itself, establish that definition 10(c) is ambiguous or that the county's interpretation is reasonable. Having reviewed the relevant case law supporting both sides of the issue, we consider the weight of the authority.

3. The Weight of the Authority

To predict how the Delaware Supreme Court would decide this case, we must consider "reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." McKenna v. Ortho Pharm. Corp., 622 F.2d 657, 663 (3d Cir. 1980). This includes "relevant state precedents, analogous decisions, considered dicta, [and] scholarly works." Id. Having reviewed the relevant precedent, it is difficult to predict how the Delaware Supreme Court would decide the issue before us. Importantly, we can discern no appreciable trend among the cases. First, the universe of cases that examines language identical to definition 10(c) is very small. While our job is not simply to count the number of cases on both sides, even if we did so, the line of cases on each side would be roughly equal. Moreover, one Circuit Court of Appeal has weighed in on each side of the issue, and each time only in dicta. Still other cases offered only bare-boned analyses. And finally, with particular relevance to our task, not one of the cases cited is from a Delaware state court or a federal court construing Delaware law.

The most we can glean from the conflicting case law on this issue is that, as a starting point, definition 10(c) may reasonably be susceptible to more than one interpretation. When faced with a similar situation in another case, we explained that

> [a]lthough the presence of conflicting judicial decisions does not automatically mandate a finding of ambiguity, we think it has some relevance. . . . We are confronted here with two lines of contrasting cases . . . While it is our responsibility to ascertain which of these lines is most likely to be followed in Delaware, we cannot help

14

> but view such a division as at least suggesting that the
> . . . [contested term] is susceptible of more than one
> reasonable definition.

New Castle v. Hartford I, 933 F.2d at 1196. In short, "that
different courts have arrived at conflicting interpretations of
the policy is strongly indicative of th[is] policy's essential
ambiguity." Little v. MGIC Indem. Corp., 836 F.2d 789, 796
(3d Cir. 1987) (citation omitted). Thus, as a starting point,
we tend to view the case law as indicating that definition
10(c) is susceptible to more than one reasonable
interpretation and, as such, is ambiguous. For greater
guidance on this issue, we now turn to the traditional rules
of contract interpretation.

4. Rules of Contract Interpretation

Insurance policy disputes often turn on the meaning of a
single term or phrase. See, e.g., New Castle v. Hartford I,
933 F.2d at 1193-99. The case before us is somewhat
different because it turns on the function of a phrase -- "by
or on behalf of" -- within a larger provision. As a
consequence, we will look to the grammatical arrangement
of clauses in definition 10(c) to construe the meaning of
definition 10(c). See Lake County v. Rollins, 130 U.S. 662,
670 (1889) ("To get at the thought or meaning expressed in
a statute, a contract, or a constitution, the first resort, in
all cases, is to the natural significance of the words, in the
order of grammatical arrangement in which the framers of
the instrument have placed them."); see also 17A Am. Jur.
2d Contracts S 369 (1991) (instructing a court to give "due
force to the grammatical arrangement of clauses" because
grammatical construction of a contract "is often a reliable
signpost" in construing its language).

National argues that definition 10(c) is not ambiguous.
The heart of its argument is that the phrase "by or on
behalf of its owner, landlord or lessor" modifies "wrongful
eviction from, wrongful entry into, or invasion of the right
of private occupancy," and thus requires that the insured
be the owner, landlord or lessor of the property at issue.
The county, on the other hand, maintains that "by or on
behalf of" pertains to its nearer antecedent "person,"
establishing the requirement that the claimant have the
right to occupy the premises.

15

The grammatical construction of contracts generally requires that a qualifying or modifying phrase be construed as referring to its nearest antecedent. See Bakery and Confectionery Union and Indus. Int'l Pension Fund v. Ralph's Grocery Co., 118 F.3d 1018, 1026 (4th Cir. 1997) (construing a collective bargaining agreement) (citation omitted); see also Aks v. Southgate Trust Co., 1994 WL 171537 (D. Kansas Mar. 31, 1994), at *9 (concluding that the "[r]ules of grammar and contract interpretation as well as simple logic dictate" that a particular clause modifies the word directly preceding it). The Ninth Circuit applied this rule of contract interpretation in construing the language of an insurance contract in Interstate Fire and Casualty Co. v. Archdiocese of Portland in Oregon, 35 F.3d 1325 (9th Cir. 1994) (applying Florida law). Under the terms of the policy, the underwriters agreed "to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability imposed upon the Assured by law . . .. for damages . . . on account of personal injuries . . . arising out of any occurrence happening during the period of Insurance." Id. at 1329 (ellipses in original). The insurance underwriter argued that the assuring clause required that all damages occur within the policy period in order to be covered. In contrast, the court concluded that "based on the plain meaning of the assuring clause . . . it is the occurrence, rather than the damages, that must happen during the policy period." Id. (internal quotation marks omitted). Thus, in this example, "happening during the period of Insurance" modifies "occurrence," the noun that directly precedes it, and not "damages," which is more remote.9

_____

9. Similarly, the Eleventh Circuit, in Gibbs v. Air Canada, applied the same rule of contract construction to a contract in which a company called Aircraft Services agreed to provide various ramp services to Air Canada. 810 F.2d 1529, 1531 (11th Cir. 1987). A liability provision in the contract stated that "Service Inc. does not assume any liability for damages caused by or resulting from directly or indirectly, wholly or in part, any failure or fault other than negligence or willful misconduct . . . ." Id. at 1536. Noting that the "grammatical construction of contracts generally requires that a qualifying phrase be construed as referring to its nearest antecedent," the court concluded that the "natural reading" of the phrase was that "wholly or in part" modified "caused by or resulting from directly or indirectly," id., the language that most directly preceded it.

16

When we apply this rule of construction to definition 10(c), it is plain that "by or on behalf of" modifies "that a person occupies," the language that directly precedes it, and not the "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy" language that commences definition 10(c). On this basis, we find the county's interpretation of definition 10(c) to be entirely reasonable. Because definition 10(c) is subject to more than one reasonable interpretation, it is ambiguous, and must be construed in favor of the county.[10]  See supra section III.B. (noting that ambiguous language is construed against the insurer as a matter of Delaware law).

Our finding that the county's interpretation of definition 10(c) is reasonable is not diminished by the fact that this interpretation may render portions of the provision surplusage in cases of "wrongful eviction" and "wrongful entry." As noted earlier, under Delaware law, we must consider the phrase "by or on behalf of " in the context of definition 10(c) as a whole. See Cheseroni v. Nationwide

_____

10. We hoped that an examination of the punctuation used in definition 10(c) might clarify any ambiguity therein. See, e.g., Plymouth Mut. Life Ins. Co. v. Illinois Mid-Continent Life Ins. Co. of Chicago, IL, 378 F.2d 389, 391 (3d Cir. 1967) (stating that "punctuation may be used as an aid in interpreting a contract"); 17A Am. Jur. 2d Contracts S 370 (1991) (stating that "where words do not have a plain meaning, the rules of punctuation may be of some assistance"). We were disappointed. At oral argument, counsel for National represented to this Court that, in construing definition 10(c), one is supposed to "breathe" in between the terms "that a person occupies" and "by or on behalf of," presumably to break the natural link between the two phrases. Yet in drafting this policy, National could easily have inserted a comma in between "occupies" and "by or on behalf of" to function as an "interruption in continuity of thought or sentence structure." The Chicago Manual of Style (John Grossman ed., University of Chicago Press, 14th ed. 1993). That is, a comma would have alerted the reader that National did not intend for "by or on behalf of " to flow uninterrupted from "that a person occupies." National chose instead, however, to assume that the reader would "breathe" in between "by" and "occupies." In making this choice, National also assumed the risk that the language might be misconstrued. And, "convoluted or confusing terms are the problem of " National, not the county. Emmons v. Hartford Underwriters Ins. Co., 697 A.2d 742, 745 (Del. 1997).

17

Mut. Ins. Co., 402 A.2d 1215, 1217 (Del. 1979) ("[A] single clause or paragraph of a contract cannot be read in isolation, but must be read in context, and every portion of the contract deserves consideration."); New Castle v. Hartford III, 970 F.2d at 1271 ("[A] word or term cannot be considered in isolation; it must be read in the semantic and functional context of the policy or clause at issue to determine if two competing, reasonable interpretations exist."). We have said that "by or on behalf of" is ambiguous because it can reasonably be interpreted to require the insured to commit the offense as owner, landlord, or lessor, or to define the possessory status of the claimant. It follows, then, that "wrongful eviction from a room . . . by or on behalf of the owner, landlord or lessor" can mean either that the owner, landlord, or lessor must commit the eviction, or that the claimant must have the right to possess the room.11 The latter interpretation, however, seems to render the term "wrongful" superfluous. Indeed, an eviction is not "wrongful" unless the evicted party (the claimant) has a right to possess the premises. And this Court takes care not to render other portions of a provision or contract superfluous when construing contract language. See, e.g., Contrans, Inc. v. Ryder Truck Rental, Inc., 836 F.2d 163, 169 (3d Cir. 1987) (applying Pennsylvania law); see also Restatement (Second) of Contracts S 203(a) (1979) (stating that "an interpretation which gives a reasonable, lawful and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect").

In this vein, we note that interpreting the phrase "by or on behalf of" to require a claimant to have the right to

_____

11. The language "a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor" applies to all three offenses -- wrongful eviction, wrongful entry, and invasion of the right of
private occupancy. We know this because wrongful eviction is followed by "from," entry by "into," and invasion by "of." "From," "into" and "of " are all prepositions, and as such, have an object. The objects in this case
are the room, dwelling, or premises. Thus, definition 10(c) must be read, for example, as "wrongful eviction from a room . . . ," "wrongful entry into a room . . . ," or "invasion of the right of private occupancy of a room . . . ."

18

possess the room does not necessarily render the word "wrongful" surplusage. Whereas an "invasion of the right of private occupancy" is itself a tortious act, both evictions and entries can be executed rightfully. For example, a landlord may rightfully evict a tenant who has not paid rent. Thus, the word "wrongful" complements the "by or on behalf of" language by ensuring that coverage under definition 10(c) is limited to situations in which the insured has committed a wrongful, tortious act. As we have noted in the past, insurance policies are often written with an abundance of caution; indeed, they routinely use words or groups of words that are fairly synonymous with one another, particularly to underline a salient point. See New Castle v. Hartford I, 933 F.2d at 1194 & n. 56 (concluding that the Delaware Supreme Court would persist in giving a term its plain meaning even though other courts feared that construction rendered the term surplusage). Therefore, notwithstanding a potential contextual defect, we are unwilling to override our conclusion that the county's interpretation of definition 10(c) is reasonable when the contextual defect is itself subject to competing interpretations. Although we would prefer to give equal effect to all of the language in definition 10(c), we refuse to reject an otherwise reasonable reading to avoid what might only be a potential contextual infirmity. In sum, the contextual complexity of definition 10(c) only reinforces our conclusion that the provision is ambiguous.

We also reject National's argument that its interpretation of definition 10(c) alone makes sense when viewed in the context of the entire CGL policy. It argues that the "entire object of the CGL policies" is "to insure against the tortious conduct of the insured." Br. of Appellee, at 28. We recognize that the Delaware Supreme Court has considered the "purpose of liability policies in general" to determine the scope of coverage. E.I. Du Pont De Nemours & Co. v. Allstate Ins. Co., 686 A.2d 152, 157 (Del. 1996) (construing a CGL insurance policy). Contrary to National's argument, however, viewing "by or on behalf of " in the context of the entire policy does not foreclose the county's interpretation of definition 10(c). Indeed, the county's position that "by or on behalf of " requires the claimant to have the right to possess the premises is consistent with the purpose of the

19

policy as stated by National; the language as construed by the county ensures that the only claims covered under the policy are for tortious conduct.

Furthermore, we reject National's claim that under the county's interpretation

>there would have been no conceivable way for Appellee to rate the actuarial risk involve in issuing the CGL policies. . . . Appellee can only sell Appellant a policy of CGL insurance if there is a readily quantifiable number of properties which Appellee [sic: Appellant] owns, leases or rents. If Appellant's interpretation had been accepted by the parties at the time the subject CGL policies were issued, the premium charged to Appellant for such coverage would have been astronomical since Appellant could potentially be held liable for wrongfully entering or invading an ever-expanding number of `rooms, dwellings, or premises' within New Castle County.

Br. of Appellee, at 41. In brief, National claims that its interpretation of definition 10(c) is the only reasonable one because otherwise, it would have been impossible for National to assess the actuarial risk involved in issuing a policy to the county. National's argument fails for several reasons. First, National claims that it would only issue a policy to the county if National could quantify the number of properties the county owned, leased, or rented. Yet, this Court could not find, and indeed National did not identify, any provision in the policy that limited the county's ability to buy, lease, or rent new properties while covered by the policy. Thus, there does not appear to be any policy mechanism that fixes the number of properties the county owns, leases, or rents within the limits supposedly established by the amount of the premium.

Second, the invasion offense is just one of several personal injury offenses listed in definition 10. See App. to Br. of Appellant, at A141 (CGL Policy). National claims that without knowing the number of properties owned, leased, or rented by the county, it could not assess the county's risk for claims of eviction, entry, or invasion. Assuming that is true, how does National assess the county's risk for "false

20

arrest, detention, or imprisonment" without knowing how many people the county could falsely arrest? Or "malicious prosecution," without knowing how many people the county could potentially maliciously prosecute? And again National has not indicated that the policy limits the coverage of these personal injury offenses to a specific number. It seems to this Court that there are a potentially infinite number of people the county could libel or slander through an infinite number of written and oral statements, and yet National was able to calculate a premium to insure the county in connection with those offenses.

Third, we must be sure to read the policy language from the average consumer's point of view. See New Castle v. Hartford I, 933 F.2d at 1190 (noting that "under Delaware law, the parties to an insurance contract are bound by the popular, lay meaning of its terms, regardless of the sophistication of the insured."); see also Continental Ins. Co. v. Burr, 706 A.2d 499, 501 (Del. 1998) (construing ambiguous language to satisfy the average consumer's expectations). The average consumer can be expected to appreciate that the insurer will insure a particular risk only under certain circumstances when those circumstances are explicitly spelled out in the contract. For example, it is clear that the insurer deems a particular event too risky for it to insure the policyholder against when the insurer includes a clause explicitly excepting that risk in the policy. This was the case in New Castle v. Hartford III, where we stated that an exclusion clause "embodies an understanding that the insurer will only underwrite a certain, specific risk, calculable to a margin of actuarial certainty and rational from an economic point of view for both parties." Id. at 1272. In contrast, definition 10(c) is not an exclusion clause and does not "embody" a similar understanding. National's argument thus expects too much from the average insurance consumer.

Lastly, and most importantly, what National intended definition 10(c) to mean is very different from what the provision's language conveys. At best, National's actuarial argument suggests that National has a sound business rationale for the interpretation of definition 10(c) it urges on this Court. The argument does not, however, demonstrate

21

that National succeeded in drafting a policy that limited coverage for the invasion offense only to cases when the county was the owner, landlord, or lessor. Cf. Little, 836 F.2d at 796 (acknowledging an insurer's "sound business reasons" for not wanting to be obligated to defend the insured, while rejecting notion that such reasons prove that the insurer "succeeded in drafting a policy that unambiguously states this intention.").

In sum, both National and the county "offer reasonable, though problematic, interpretations" of definition 10(c). Phillips Home Builders, Inc. v. Travelers Ins. Co., 700 A.2d 127, 129, 130 (Del. 1997) ("We find problems with both sides' interpretations. Neither one gives full effect to all of the contract language and both could be applied in ways that a reasonable person probably would not have intended."). And, the case law before us fails to offer definitive guidance, but leads us to suspect that definition 10(c) is ambiguous. This finding is supported by the rules of contract construction. Also, in holding that definition 10(c) is ambiguous, we recognize Delaware's strong insistence that insurance companies are accountable for confusing policy language. In this case, National had the "opportunity and responsibility to state the terms of its coverage . . . in clear and understandable language." Id. at 130. Thus, because using the tools of contract interpretation leads to two reasonable interpretations of the "by or on behalf of" language in definition 10(c), we hold that it is ambiguous.

Finally, because the District Court did not reach the issue of whether the Acierno actions stated a claim for an invasion, we decline to reach that issue on appeal. See Selected Risks, 718 F.2d at 69 (stating that generally this Court will not consider an issue not passed upon by the court below). Thus, we will not address the county's argument that the nature of Acierno's claims is consistent with an invasion of the right of private occupancy. Nor will we address National's response that the invasion offense is limited to landlord-tenant scenarios and situations that involve tangible interference with a possessory interest in land. Such arguments go to the nature of the invasion offense itself and are outside of our scope of review. We

22

leave it to the District Court to determine whether invasions are limited to the landlord-tenant context and whether they are limited to tangible interference with possessory interest. The District Court will examine them on remand when it decides whether the claims made in the Acierno actions constitute an "invasion of the right of private occupancy."

IV. CONCLUSION

For the foregoing reasons, the portion of the District Court judgment finding that definition 10(c) is unambiguous will be reversed. The case will be vacated and remanded to the District Court to determine whether the Acierno actions constitute an invasion of the right of private occupancy.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

23