**NEW CASTLE COUNTY, DELAWARE, Plaintiff,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Defendant.**

No. Civ.A. 96–504–RRM.

United States District Court, D. Delaware.

Feb. 22, 2000.

Peter J. Walsh, Jr., William J. Dorgan, Potter Anderson & Corroon LLP, Wilmington, DE, for plaintiff.

James F. Bailey, Jr., Christopher J. Sipe, Bailey & Wetzel, P.A., Wilmington, DE, for defendant.

**OPINION**

McKELVIE, District Judge.

This is a contract case. Plaintiff New Castle County is a political subdivision of the State of Delaware. Defendant National Union Fire Insurance Company of Pittsburgh is a Pennsylvania corporation with its principal place of business in New York, New York. Federal jurisdiction is based upon diversity of citizenship.

Between 1991 and 1993, the County purchased a series of Public Officials Liability (POL) and Commercial and General Liability (CGL) policies from National Union. In 1992, Frank Acierno, a real estate developer, sued the County for deprivation of his civil rights after the County denied him a building permit and rezoned a parcel of his land. As of September 1999, the County has incurred approximately $925,000 in legal expenses in conjunction with the *Acierno* litigation. Under the POL policy, National Union compensated the County for $327,000 in defense costs, and agreed to pay the County up to $550,000 in additional costs.

The County seeks further coverage from National Union under the CGL policy. The CGL policy obligates National Union to pay the County's legal expenses in suits alleging a "personal injury," which the policy defines, in part, as "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor." The County contends that Acierno's claims amount to allegations of an "invasion of the right of private

occupancy" for the purposes of the CGL policy.

In 1996, National Union filed suit for a declaratory judgment that the CGL policy does not obligate it to defend and indemnify the County in the *Acierno* litigation.

This case was originally assigned to the Honorable Joseph J. Longobardi. In 1997, the court ruled that the "personal injury" provision of the CGL policy covers only those claims arising from wrongful acts committed by or on behalf of the owner, landlord, or lessor of the premises in question. Since the County does not own the land at issue, or otherwise act as its landlord or lessor, the court concluded that the policy does not provide coverage for the expenses incurred in the *Acierno* litigation, and granted summary judgment in favor of National Union. *New Castle County v. National Union Fire Insurance Co.,* 1997 WL 809207 (D.Del. Dec.30, 1997) (Longobardi, J.). The Third Circuit ruled that the policy provision at issue was ambiguous, and could reasonably be construed to cover actions brought against the County, even though the County was not an owner, landlord, or lessor of Acierno's property. *New Castle County v. National Union Fire Insurance Co.,* 174 F.3d 338 (3d Cir. 1999). The Third Circuit vacated the district court's grant of summary judgment, and remanded for a determination of whether the offenses alleged by Acierno constitute an "invasion of the right of private occupancy."

On July 7, 1999, the case was reassigned to this judge, after Judge Longobardi's retirement.

Both parties have filed motions for summary judgment. This is the court's decision on their motions.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

The court draws the following facts from the complaint, the answer, and the affidavits submitted by the parties.

### A. *The Acierno Litigation*

Frank Acierno is a real estate developer in Delaware. He owns a tract of real estate near Route 273 and the Christiana Mall (the "mall property") and a tract of real estate in Hockessin known as Westhampton. In approximately 1992, the County denied Acierno a building permit for the mall property, and it decided to void Acierno's record plan for the Westhampton property and to rezone the property.

In 1992 and 1993, Acierno filed three complaints in this court against the County and its officials. The *Acierno* cases were assigned to the Honorable Sue L. Robinson.

On July 1, 1992, Acierno filed a complaint concerning the County's denial of a building permit for the mall property. Acierno sued under 42 U.S.C. § 1983, alleging that the County unlawfully deprived him of his property without due process of law, and that the County arbitrarily treated him differently than other developers, in violation of the Equal Protection Clause of the Fourteenth Amendment. After the court granted preliminary injunctive relief in favor of Acierno, *see Acierno v. Mitchell,* 1992 WL 694590 (D.Del. Dec.30, 1992) (Robinson, J.) (*Acierno I*), the Third Circuit vacated this court's decision, ruling that the case was not yet ripe. *Acierno v. Mitchell,* 6 F.3d 970 (3d Cir.1993).

Acierno filed a second complaint on July 2, 1992, alleging that the County violated his rights to due process and equal protection when it decided to void Acierno's record plan for the Westhampton property and to rezone the property. The court granted in part the County's motion for summary judgment, but denied the motions by the individual officers of the County that they are entitled to legislative or qualified immunity. *See Acierno v. Cloutier,* 1993 WL 215133, at *7 (D.Del. June 9, 1993) (Robinson, J.) (*Acierno II*). The individual defendants appealed the court's denial of summary judgment, and

the Third Circuit reversed in part. Upon the defendants' motion for rehearing, the Third Circuit, sitting en banc, vacated the panel's decision and granted reargument on the question of appellate jurisdiction. *Acierno v. Cloutier,* 40 F.3d 597 (3d Cir. 1994). The Third Circuit accepted jurisdiction over the appeal, and reversed this court's denial of summary judgment. *Id.*

On December 17, 1993, Acierno filed a third action in this court, alleging the same claims raised in *Acierno I* that had been previously dismissed for lack of ripeness. This court granted Acierno's motion for a preliminary injunction. *Acierno v. New Castle County,* 1994 LEXIS 1683, 1994 WL 720273 (D.Del. Feb. 11, 1994) (Robinson, J.) (*Acierno III*). The Third Circuit reversed this court's grant of a preliminary injunction, and remanded the case for further proceedings. *Acierno v. New Castle County,* 40 F.3d 645 (3d Cir.1994). On October 24, 1997, the parties settled *Acierno III* under the agreement that the County would issue a building permit for the mall property, and would pay Acierno reasonable attorney's fees not to exceed $250,-000.

As of September 1999, in defending the three *Acierno* litigations, the County has spent approximately $675,000 in legal fees, in addition to the $250,000 that the County paid to Acierno pursuant to the October 24, 1997 settlement agreement. *Acierno II* has not yet been settled and may still be tried.

B. *The County's POL and CGL Policies*

National Union is an insurance company operating within the American International Group (AIG) of insurers. National Union sold the County the two policies presently at issue.

In 1992, National Union sold the County a Public Officials and Employees Liability Insurance Policy (Policy No. 439–12–94) (the "POL policy"). The POL policy has a $1 million limit of liability for the policy period May 12, 1992 to July 1, 1993. The POL policy excludes coverage for claims arising from prior litigation, stating that National Union shall not be made liable to make any payment in connection with any claim for any wrongful act occurring prior to May 12, 1992, for which the County might reasonably expect that such wrongful act would give rise to a claim.

New Castle also purchased from National Union a Commercial General Liability (CGL) policy. National Union sold the County virtually identical CGL policies each year from 1991 to 1993. The policy presently at issue, Policy No. GL 590–62–18–RA, covers the period from July 1, 1992 to July 1, 1993. The County paid a $176,-543 premium for the policy, which has a limit of liability of $1 million for personal injury claims.

Under the terms of the CGL policy, National Union has the duty to defend and indemnify the County in suits seeking damages for a "personal injury." Definition 10 of the policy provides a definition for the term "personal injury," stating in pertinent part:

10. "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

. . .

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor.

C. *The County's Demands for Indemnification*

Julie Sebring, then-Assistant County Attorney of New Castle County, pursued the County's claims for defense costs and indemnification. On or about July 15, 1992, Sebring received a call from Lori Edwards, a representative of American International Adjustment Co. (AIAC), which is the entity responsible for determining and settling claims on behalf of National Union. Edwards allegedly stated that the County's CGL policy provides coverage for

its legal expenses arising from the *Acierno* litigation.

After several months without receiving payment from National Union, Sebring learned that Edwards was no longer working for AIAC. She telephoned Daniel Lynch, a POL policy adjuster working on behalf of National Union, who said that National Union had taken the position that it was not liable under the POL policy. Lynch asserted that the *Acierno* claims arose from an earlier dispute between Acierno and the County. *See Acierno v. Folsom,* 337 A.2d 309 (Del.1975). As such, he stated, the expenses incurred by the County defending the *Acierno* litigation fall within the prior litigation exclusion of the POL policy, leaving National Union with no obligation to defend or indemnify the County.

National Union sent the County a letter dated January 26, 1993, stating its refusal to make payments under the POL policy. In July 1993, nonetheless, National Union agreed to pay the County $327,000 in defense costs. In May 1994, National Union filed suit for a declaratory judgment that the POL policy did not obligate it to continue defending the County in the *Acierno* litigation. The parties settled the dispute over the POL policy in early 1995 when National Union agreed to pay the County up to $550,000 to cover additional costs arising out of the *Acierno* litigation, in exchange for a release from further liability under the policy.

During the parties' dispute over the coverage of the POL policy, they also disagreed as to whether the CGL policy covered the County's expenses arising from the *Acierno* litigation. In a telephone call in February 1993, Jack Napier, an AIAC adjustor working on behalf of National Union, told Sebring that he didn't think the Acierno cases fell into the typical category of cases covered by the CGL policy. On June 28, 1993, Napier wrote Sebring, stating that the CGL policy does not obligate National Union to defend or indemnify the County in the *Acierno* litigation.

Approximately three years later, on June 13, 1996, Sebring wrote to National Union renewing the County's request for coverage under the CGL policy. Sebring avers that the County did not press its claims under the CGL policy in the years between 1993 and 1996 in light of National Union's agreement in July 1993 to cover the County's litigation expenses under the POL policy.

On October 21, 1996, National Union filed a complaint in this court seeking a declaratory judgment that the CGL policy does not require National Union to defend or indemnify the County in the *Acierno* litigation. On December 30, 1997, Judge Longobardi granted National Union's motion for summary judgment. *New Castle County,* 1997 WL 809207, at *12. The court held that Definition 10(c) of the CGL policy only provides coverage for acts committed by the County when acting as an owner, landlord, or lessor of the property in question. Because the County is not the owner, landlord, or lessor of the property, the court concluded that National Union had no obligation to defend or indemnify the County. *Id.* The court declined to reach the question of whether the civil rights violations alleged in the *Acierno* actions constitute an "invasion of the right of private occupancy." *Id.* at *8.

The County appealed the denial of its motion for summary judgment. The Third Circuit ruled that Definition 10(c) is ambiguous, and that the County could potentially receive compensation under the CGL policy even though it was not an "owner, landlord or lessor" of Acierno's property. *See New Castle County,* 174 F.3d at 351. The Third Circuit vacated this court's judgment and remanded the case to determine whether the *Acierno* actions allege an "invasion of the right of private occupancy." *Id.* at 352.

In September 1999, both parties filed motions for summary judgment.

## II. DISCUSSION

### A. Legal Standards

Both parties have moved for summary judgment. Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56. The interpretation and construction of insurance contracts presents a question of law. *See E.I. du Pont de Nemours & Co. v. Allstate Ins. Co.,* 686 A.2d 152, 155 (Del.1996). Delaware law controls in this case. *See New Castle County,* 174 F.3d at 342. The material facts underlying this litigation are not in dispute.

### A. The County's Position

The County argues that under the plain meaning of the phrase, "invasion of the right of private occupancy," National Union is obligated to defend and indemnify the County. The County notes that *Black's Law Dictionary* defines the word "invasion" as an "encroachment upon the rights of another." *Black's Law Dictionary* 824 (6th ed.1990). The County further states that the term "right of private occupancy" generally connotes a legal entitlement to possession or control of real property. *See Beltway Management Co. v. Lexington–Landmark Ins. Co.,* 746 F.Supp. 1145, 1151 (D.D.C.1990). According to the County, a party commits an "invasion of the right of private occupancy" when it encroaches upon someone's right to possess or use property. The County asserts that this, in essence, is what Acierno alleged in the underlying litigation, as the County's exercise of its regulatory authority allegedly impaired Acierno's right to use and enjoy his land. In support of its position, the County relies on *Town of Stoddard v. Northern Security Ins. Co.,* 718 F.Supp. 1062 (D.N.H.1989); *Town of Goshen v. Grange Mutual. Ins. Co.,* 120 N.H. 915, 424 A.2d 822 (1980); and *County of Geauga v. Forum Ins. Co.,* 1988 WL 41535, 1988 Ohio App. Lexis 1619 (Ohio Ct.App. Apr. 29, 1988).

### B. National Union's Position

National Union argues that it has no obligation to defend and indemnify the County in the *Acierno* suits. National Union contends that the court should not accord an expansive definition to the term "invasion of the right of private occupancy," but should recognize that the phrase draws meaning and content from its preceding language. National Union notes that the CGL policy defines a "personal injury" as "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy [of a premises]." Accordingly, National Union argues that the meaning of the phrase "invasion of the right of private occupancy" must be analogous to, and no broader than, the meaning of the terms "wrongful eviction" or "wrongful entry." To ascribe a more inclusive definition to the term "invasion of the right of private occupancy," National Union urges, would expand the coverage of the CGL policy beyond the kinds of risks that the parties intended to insure against.

### C. Principles of Contract Construction

To construe disputed terms in an insurance contract, the first step is to look to the plain meaning of the term. *See SI Management L.P. v. Wininger,* 707 A.2d 37, 42 (Del.1998). When the plain meaning of the term is ambiguous, the disputed language should be examined in the context of the entire policy. *See New Castle County,* 174 F.3d at 343.

#### 1. Plain Meaning

Insurance companies have included the clause "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy" in their policies for at least twenty years, and litigants have repeatedly disputed the meaning of the term "invasion of the right of private occupancy." *See, e.g., Town of Goshen,* 424 A.2d at 824.

The term "invasion" has a range of meanings. The term can be interpreted to mean any form of encroachment upon the rights of another. *See Town of Goshen,* 424 A.2d at 824; *Black's Law Dictionary* 824 (6th ed.1990). Alternatively, the term may be defined in a more limited sense, referring only to physical encroachments. *See Columbia National Insurance v. Pacesetter Homes, Inc.,* 248 Neb. 1, 532 N.W.2d 1 (1995).

The term "private occupancy" also has multiple definitions. Construed broadly, it may refer to the period during which a person owns real property. *See Black's Law Dictionary* 1078 (6th ed.1990). More restrictively, "private occupancy" may refer to the act of inhabiting a premises, and not to the right to use or enjoy the premises. *See Columbia National,* 532 N.W.2d at 9; *Beltway Management,* 746 F.Supp. 1145, 1150 (D.D.C.1990).

After at least two decades of litigation over the meaning of the term "invasion of the right of private occupancy," courts have not arrived at a uniform definition of the term. Rather than attempt to construe the term "invasion of the right of private occupancy" solely based on its plain meaning, courts have concluded that the term is ambiguous, and have resorted to other techniques of contract interpretation. *See, e.g., Beltway Management,* 746 F.Supp. at 1150. This court, similarly, will examine the meaning of the term in the broader context of the CGL policy.

### 2. *The Context of the Disputed Term*

Insurance companies continue to employ the term "invasion of the right of private occupancy" in their policies, despite twenty years of legal decisions finding that this term is ambiguous. It is instructive to ask why.

Insurance policies do not use the term "invasion of the right of private occupancy" in stand-alone language. Rather, the caselaw discloses that this term consistently follows two other terms of more definite meaning, "wrongful eviction," and "wrongful entry." If an insurance policy only recited the terms "wrongful eviction" and "wrongful entry," the insurer could resist coverage for actions that do not strictly fall within these enumerated terms. *See Martin v. Brunzelle,* 699 F.Supp. 167, 170 (N.D.Ill.1988). Insurance buyers may want their policies to cover risks associated with an entire class of acts that may give rise to liability. Landlords, for example, may seek coverage for the potential liability they incur when physically entering into a tenant's estate. As such, insurance policies recite, in addition to specific terms such as "wrongful eviction" and "wrongful entry," a catch-all phrase such as "invasion of the right of private occupancy." *See id.* With this phrase included in the policy, a landlord who enters into his tenant's premises may receive coverage even though his actions do not technically amount to a "wrongful eviction" or "wrongful entry."

The term "invasion of the right of private occupancy" lacks a precise definition. In Definition 10(c), however, it follows the terms "wrongful eviction" and "wrongful entry," which each have more specific meanings. According to the principle of ejusdem generis, the term "invasion of the right of private occupancy" should be construed to encompass only those actions of the same general type or class as "wrongful eviction" and "wrongful entry." *See Sadler v. New Castle County,* 565 A.2d 917, 923 (Del.1989); *Hercules Inc. v. Virginia,* 1999 WL 167830, at *4 (Del.Super. Feb.12, 1999) ("Where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned."). To apply a broader definition to the term "invasion of the right of private occupancy" would be to expand the coverage of the policy beyond the scope of the risks the parties intended to insure against.

556

If the harms complained of by Acierno are of the same general kind or class as "wrongful eviction" or "wrongful entry," then the CGL policy obligates National Union to defend and indemnify the County. *See Great Northern Nekoosa Corp. v. Aetna Casualty and Surety Co.,* 921 F.Supp. 401, 417 (N.D.Miss.1996). The terms "wrongful eviction" and "wrongful entry" both refer to actions in which the wrongdoer physically disturbs the complainant's right to occupy a premises. Acierno's complaint alleges that the County's zoning and permitting decisions improperly deprived him of the right to use and enjoy his land. Acierno does not allege that the County or its officials evicted him from his land, entered upon his land, or otherwise physically disturbed his occupancy of the land. Acierno alleges harms distinct from those that are enumerated in the CGL policy. Although the County's zoning and permitting decisions could be broadly construed to amount to an "invasion of the right of private occupancy," such an expansive reading of this term would be inconsistent with the principle of ejusdem generis, which limits the meaning of this term to acts such as "wrongful eviction" or "wrongful entry."

The court finds that the coverage of the CGL policy does not extend to the County's liabilities arising from the *Acierno* litigation. This conclusion is consistent with the nature of the insurance policies purchased by the County. The County bought a POL policy from National Union to insure it against potential liabilities arising from the conduct of its officials and employees. Although the parties disagreed whether the "prior litigation" exclusion of the POL policy obligated National Union to indemnify the County for the *Acierno* litigation, there is no dispute that the POL policy covers the kinds of liabilities incurred by the County in its zoning and permitting activities. Recognizing that the County had already insured itself under the POL policy against liabilities arising from the exercise of its regulatory authority, it is not surprising that its CGL policy covers a different set of potential liabilities.

Because the issue before the court is a question of law, summary judgment is appropriate. The court will deny the County's motion for summary judgment, and will grant National Union's motion for summary judgment. The court will enter an Order consistent with this Opinion.